**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TECHNOMEDIA INTERNATIONAL, INC.,**<br><br>**Defendant.** | ) | **Civ. No. 09cv00529 (RJL)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff American Petroleum Institute ("API") opposes Defendant Technomedia International, Inc.'s ("TMI") motion to dismiss the present action for lack of subject-matter jurisdiction. API's complaint properly pleads and alleges a factual basis for predicting a recovery at or above the amount required for diversity jurisdiction under 28 U.S.C. § 1332. TMI's motion to dismiss misapprehends API's claims and misapplies the legal standards governing calculation of the amount in controversy in a declaratory judgment action. Moreover, TMI's proffered evidence of additional royalties being withheld from API provides further support for this Court's jurisdiction. Accordingly, the Court should deny Defendant's motion.

**BACKGROUND**

On March 17, 2005, API and TMI entered into an agreement ("API-TMI Agreement" or "the contract") granting TMI a non-transferable license to use API's trademarks in the

development, promotion and sale of certain e-learning courses to the petroleum and natural gas industry.[1] *See* Compl. ¶ 2. The contract term ran to August 2012. *See* Compl. Exh. A, Amendment 3. As alleged in the complaint, TMI repeatedly and materially breached its contractual obligations by, *inter alia*, failing to take commercially reasonable efforts to market API-branded, e-learning courses and failing to remit royalties to API based on net revenue from sales. *See, e.g.*, Compl. ¶ 57. Further, on December 15, 2008, a federal bankruptcy court ordered that TMI had no legal right to use most of the e-learning courses ("the Primedia courses") that were subject to the contract, placing TMI in clear violation of its express contractual representations and warranties. *See, e.g.,* Compl. ¶¶ 11, 47-49.[2] Shortly afterwards, on January 12, 2009, API terminated the API-TMI Agreement. *See* Compl. ¶ 50 & Exh. D.

On March 19, 2009, API filed the present suit pursuant to the federal diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1), and Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202. In the instant action, "API seeks a judicial determination that TMI breached the API-Technomedia Agreement and that API's termination of the contract was authorized and proper, and API owes no further obligations," including licensing obligations, "thereunder to TMI." Compl. ¶ 60. In addition, "API seeks a judicial determination and order enforcing its continuing contractual right to an audit of TMI's sales records and further requiring payment to API of owed royalties thereby discovered." Compl. ¶ 67. Finally, API requests other "[n]ecessary and proper

---

[1] E-learning refers, in general, to computer-based training programs.

[2] Because TMI breached its warranted right to the Primedia courses by operation of bankruptcy law, *see* Compl. ¶ 47, the propriety of API's termination on this ground is ripe for speedy resolution under the Declaratory Judgment Act, *see* Fed. R. Civ. P. 57. Plaintiff anticipates filing an early motion for partial summary judgment on this ground.

relief to which API is also entitled," under 28 U.S.C. § 2202, which "includes money damages for injuries caused by TMI's contractual breaches, as established by proof." Compl. ¶ 68.

TMI has moved to dismiss API's complaint for failure to establish the amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332. TMI has argued that because the complaint alleges "indeterminate damages" and allegedly provides no "indication of the amount of unpaid royalties," the Court should reject API's pleading that subject matter jurisdiction attaches. TMI has also submitted an affidavit stating that the royalties it has withheld from API for the fourth quarter of 2008 are less than the jurisdictional amount. *See* Mot. to Dismiss, at 4-7 & Exh. 1. As detailed below, TMI misunderstands both the governing legal standards and API's claims. Accordingly, TMI's motion should be denied.

## ARGUMENT

In light of the generous standards for federal notice pleading in general, and for pleading the amount in controversy component of diversity jurisdiction in particular, it is beyond cavil that API's complaint properly invokes the Court's authority to resolve this declaratory judgment action. *See Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (stating that "the governing law mandates generosity in evaluating the eligibility of a claim for federal jurisdiction").

### A. Subject Matter Jurisdiction Exists Unless The Court Determines To A "Legal Certainty" That The Requisite Amount in Controversy Cannot Be Recovered.

API seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. *See, e.g.*, Compl. ¶¶ 56, 63. Section 2201 vests the federal district courts with authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act "should be liberally construed to accomplish the purpose intended, *i.e.*, to afford a speedy and

inexpensive method of adjudicating legal disputes . . . and to settle legal rights and remove uncertainty and insecurity from legal relationships." *Commonwealth of Puerto Rico v. Alexander*, 438 F. Supp. 90, 94 n.5 (D.D.C. 1977) (quotation omitted); *Wilderness Society v. Morton*, 479 F.2d 842, 887 (D.C. Cir. 1973) (noting court's "duty liberally to construe the Declaratory Judgment Act").

The Court's subject-matter jurisdiction over this action rests on 28 U.S.C. § 1332(a)(1), which confers upon "[t]he district courts . . . original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."[3] It is well-established that "[w]hen determining the question of jurisdiction, federal courts must accept the factual allegations contained in the complaint as true," *Sharpe v. Bair*, 580 F. Supp. 2d 123, 128 (D.D.C. 2008); *see also Owens v. Republic of Sudan*, 412 F. Supp. 2d 99, 103 (D.D.C. 2006), and "draw all reasonable inferences from those allegations in the plaintiff's favor," *Rwanda v. Rwanda Working Group*, 150 F. Supp. 2d 1, 4-5 (D.D.C. 2001). In other words, the "standard which must be met is not high." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997); *see also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (noting "[t]his burden is hardly onerous").

"[I]n *St. Paul Mercury* [*Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)], the United States Supreme Court announced the standard for deciding whether, in any federal case, the amount in controversy exceeds the jurisdictional threshold." *Rosenboro*, 994 F.2d at 16-17. The Supreme Court held: "The rule governing dismissal for want of jurisdiction in cases brought in

[3] TMI does not contest API's allegation that "the parties are of diverse citizenship." Compl. ¶ 4.

the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury*, 303 U.S. at 288-89. The Court established an exacting standard for disregarding a plaintiff's prediction of recovery: "It must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id*. at 289 (emphasis added).

Although "the amount in controversy is often not readily determinable," *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995), "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation," *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 346-47 (1977). Thus, a federal court may only dismiss a claim for injunctive or declaratory relief where it appears "to a legal certainty" that the value of the object of the litigation is below the jurisdictional threshold. *See id*. at 346 (applying "legal certainty" standard to declaratory judgment action); *see also Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (declaring that *Hunt* "set forth the standard for determining whether a complaint for declaratory or injunctive relief satisfies the requisite amount in controversy . . ."). [4] Because the notice pleading authorized by Federal Rule of Civil Procedure 8(a)(1) "does not require plaintiffs to spell out the elements underlying their jurisdictional claims in precise factual detail," *Owens*, 412 F. Supp. 2d at 109, "a federal court should not dismiss a complaint . . . for lack of subject-matter jurisdiction . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Caribbean Broad. Sys., Ltd. v. Cable*

---

[4] Although *Smith* involved a claim under the statute providing for jurisdiction over federal questions, at that time the statute, 28 U.S.C. § 1331(a) (1976), included an amount in controversy requirement identical to the diversity statute, *see, e.g.*, *Smith*, 593 F.2d at 1098.

*& Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (quotations omitted). *See also Hoffman v. Fairfax Redevelopment & Hous. Auth.*, 276 F. Supp. 2d 14, 18 (D.D.C. 2003) (finding sufficient amount in controversy on basis of complaint and record even though complaint lacked Rule 8(a)(1) statement of jurisdiction).[5]

In sum, "although the party asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question, the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro*, 994 F.2d at 17; *see also Scherer*, 347 F.3d at 397 ("The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.") (quotations omitted). "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Id*. at 397; *accord, e.g., McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957) ("If the right of recovery is uncertain, the doubt should be resolved, for jurisdictional purposes in favor of the subjective good faith of the plaintiff."). But, API's claims are not such a close call. As demonstrated below, the complaint alleges ample factual grounds upon which the Court may reasonably conclude that the requisite amount in controversy has been pled in good faith. *See Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (noting that whether amount "will exceed $75,000 is not a fact but a prediction"). TMI's additional evidence

[5] Contrary to TMI's suggestion, *see* Mot. to Dismiss, at 5, the presumption of jurisdiction over a complaint initially filed in federal court pursuant to 28 U.S.C. § 1332 is largely opposite of the presumption in play where a defendant *removes* a state court action to federal court pursuant to 28 U.S.C. § 1441(a). Because "a federal court must strictly construe the removal statute . . . the law presumes that a cause lies outside a federal court's limited jurisdiction" and "[a]ny doubts as to whether federal jurisdiction exist must be resolved in favor of remand." *RWN Dev. Group, LLC v. Travelers Indem. Co. of Connecticut*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008) (quotations omitted). In both circumstances, however, the guiding principle is that the plaintiff is the "master of [his] claim." *Id.*

of royalties that it did not pay API for the fourth quarter of 2008, on top of the complaint's allegations, simply seals the deal that this lawsuit is properly before the Court.

**B. Application of the Proper Legal Standards Validates The Court's Jurisdiction Over API's Complaint.**

TMI's motion fails to apply properly the legal standards described in the preceding section. Moreover, TMI misconstrues or ignores the factual allegations that support API's good-faith pleading that its claims confer subject-matter jurisdiction on the Court. In addition, TMI's admission that it has not paid royalties of $49,690 due API for the fourth quarter of 2008 serves to supplement (rather than substitute for) API's claim for unpaid royalties inferable from the precipitous drop in TMI payments to API from 2007 to 2008. *See* Compl. ¶¶ 17, 29, 40, 65, 66. API has also claimed damages for the reduction in sales revenues on which its royalty payments were based because of TMI's failure to take commercially reasonable efforts to promote the API branded, e-learning courses. *See* Compl. ¶¶ 57(a), 58, 68. Finally, API has challenged the continuing existence of an agreement between the parties. *See, e.g.,* Compl. ¶¶ 50, 54, 56, 60. API's claims and allegations thus preclude any determination "to a legal certainty" that "the value of the object of the litigation" will not exceed the requisite amount in controversy. *Hunt*, 432 U.S. at 346-47.

**1. TMI has misapplied the governing law and failed to show "to a legal certainty" that API's claim for unpaid royalties could not reach the jurisdictional threshold.**

Referencing only API's claim for unpaid royalties and citing only to *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998), TMI argues that API's prayer for damages is "indeterminate" and "[a]s such, Plaintiff's claim is not in good faith" and "therefore the [complaint] should be dismissed." Mot. to Dismiss, at 5. TMI's argument misses the mark. First, insofar as this Fifth Circuit opinion holds that the "legal certainty" test is "inapplicable . . .

when the plaintiff has alleged an indeterminate amount of damages," *Greenberg*, 134 F.3d at 1253, the decision is clearly inconsistent with the Supreme Court's decision in *Hunt*, which the D.C. Circuit has held "set forth the standard for determining whether a complaint for declaratory or injunctive relief satisfies the requisite amount in controversy . . . ." *Smith*, 593 F.2d at 1099. As the D.C. Circuit recognized, "any suggestion . . . that claims for equitable relief are subject to a standard more stringent than the 'legal certainty' test is of course dispelled by the Supreme Court's decision in *Hunt* that the legal certainty test applies equally to suits for injunctive relief as well as damages." *Id*. at 1101 n.7;[6] *see also Rosenboro*, 994 F.2d at 16-17 (noting, in diversity case, that "legal certainty" test is "the standard for deciding whether, in any federal case, the amount in controversy exceeds the jurisdictional threshold"). Other jurisdictions are in accord. *E.g.*, *Meridian Security*, 441 F.3d at 543 (in a declaratory judgment action, holding that "[o]nly if it is 'legally certain' that the recovery (from plaintiff's perspective) . . . will be less than the jurisdictional floor may the case be dismissed") (Easterbrook, J.). Thus, the Fifth Circuit's decision in *Greenberg* applied neither the law of the land nor the law of this Circuit, and it should not be followed.

Moreover, TMI misapplies *Greenberg*, which did not hold that a complaint must allege specific damages or be dismissed. Such a rule would deprive many plaintiffs of access to federal courts in cases, such as this one, where the information needed to calculate the *precise* amount of damages is known only to the defendant. Further, in declaratory actions, where "the amount in controversy is often not readily determinable," *Columbia Gas*, 62 F.3d at 541, the Court must

---

[6] In *Smith*, the D.C. Circuit expressly recognized that *Hunt*'s application of the "legal certainty" test superseded the circuit's prior statement in *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973) that, in establishing the amount in controversy, "[s]omewhat more is demanded when an injunction or other equitable relief is sought." *See Smith*, 593 F.2d at 1101 n.7.

ascertain the "value of the object of the litigation," *Hunt*, 432 U.S. at 347. Thus, in *Greenberg*, the Fifth Circuit affirmed that federal jurisdiction attached based on extrinsic evidence that the plaintiff's claim "would likely exceed [the jurisdictional amount]." *Id*. at 1254-55.

Unlike the plaintiff's vague allegations in *Greenberg*, API's complaint alleges a pattern of royalty underpayments based on a precipitous decline over a two-year period. *See, e.g.*, Compl. ¶¶ 17, 29, 40, 46, 65, 66. Specifically, API alleges that it received approximately $130,000 in royalties in the first quarter of 2007, Compl. ¶ 17, a figure that had dropped to $63,748 by the fourth quarter of 2007, Compl. ¶ 29, and to a paltry $13,000 by the first quarter of 2008, Compl. ¶ 40. Further, the complaint alleges that this "ninety percent (90%) *reduction* in royalties from the first quarter of 2007 . . . reflected . . . a failure by TMI to remit royalties . . . as required under the API-Technomedia Agreement," Compl. ¶ 40 (emphasis added), a suspicion heightened by TMI's "refus[al] to permit API to proceed with [a] scheduled audit" despite its contractual obligation, Compl. ¶¶ 46, 63.

TMI's contention that the amount in controversy is not established because the royalties TMI paid in any *one* quarter were less than $75,000, misapprehends API's claim. It is the progressive and unexplained free fall in royalties over the *entire contract period* that forms the basis of API's underpayment claim.[7] API had received royalties above $130,000 for the first

[7] Having further breached the contract by refusing to give API access to TMI's books and records, TMI should not be heard to assert that API "says that it does not know if any royalty amounts are due," Mot. to Dismiss, at 7. In any event, the sharp and unexplained drop in royalties received by API over the past two years is basis enough to infer underpayment of "royalties *owed* to API for the sale of API University e-learning courses prior to the termination of the contract." Compl. ¶ 63 (emphasis added); *see also id*. ¶ 3(c) (seeking a declaration that API is "owed" royalties "as well as . . . an audit"). TMI attempts to inject doubt by inserting the conditional term "if" into API's request for relief, *see* Mot. to Dismiss, at 2, 7, which actually seeks an audit and "payment to API of royalties *thereby* discovered," Compl. ¶ 67 (emphasis added).

three months of 2007, and API had every reason to expect comparable or greater quarterly royalties for the remainder of 2007, as well as in 2008. API's claim is not limited to the fourth quarter of 2008, when TMI admits withholding nearly $50,000, a sum that, without more, already represents nearly two-thirds of the required amount in controversy. Mot. to Dismiss, at 7 & Exh. 1. As described above, API alleges a pattern of royalty underpayment since at least the beginning of 2007. Thus, API's complaint, on its face, provides ample basis for predicting that the amount in controversy meets or exceeds the jurisdictional threshold.

**2. API's claim for damages from TMI's contractual breach is independent of the complaint's royalty claim.**

Moreover, API's complaint alleges that TMI breached the API-TMI Agreement through failure to "[t]ake commercially reasonable efforts to market API-branded e-learning resources," Compl. ¶ 57, a breach properly in "controversy," *id.* ¶ 56, for which API would also be entitled to "money damages for injuries caused . . . as established by proof." Compl., Prayer for Relief, ¶ 2. Under the Declaratory Judgment Act, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. It is well-settled in this Circuit and elsewhere that such "'further relief' may include an award of damages." *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 400 (2d Cir. 1975); *see also Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 548–49 (D.C. Cir. 1988); *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970) ("And money damages may, of course, be awarded in an action for declaratory judgment.").

API's claim for damages based on TMI's breach of contract for failure to undertake commercially reasonable marketing efforts to promote API-branded, e-learning courses, *see* Compl. ¶¶ 56, 57, is a separate basis for potential recovery. In documenting the precipitous drop

in the royalties remitted to API, the complaint alleges that the "reduction . . . reflected either a failure by TMI to remit royalties *or* to take commercially reasonable efforts to promote the API-branded courses, as required under the API-Technomedia Agreement." Compl. ¶ 40 (emphasis added); *see also* Compl. ¶¶ 17, 29. And, it is clear, "where a plaintiff proves a breach of contractual duty he is entitled to damages." *Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 205 (D.C. 1986) (quotations omitted). "The measure of damages is the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed." *Hildreth Consulting Engineers, PC v. Knight*, 801 A.2d 967, 972 (D.C. 2002) (quotations omitted).

Here, the progressive erosion of royalty payments to API furnishes a measure, at least in part, of the damages to which API would be entitled as compensation for TMI's breach of duty to market properly the API University courses. *See supra*, pp. 9-10. For example, simply maintaining the 1Q2007 royalty level over the subsequent seven quarters (through 4Q2008 after which API terminated the contract) would have generated over $900,000 of royalties to API. However, API's year-over-year royalties actually fell by over $212,000 — and TMI's average quarterly payment dropped by 70% — between 2007 and 2008.[8] The sharp decline in API's royalties provides a "reasonable basis," *see Sastry v. Coale*, 585 A.2d 1324, 1328 (D.C. 1991) (quotation omitted), to calculate the damages required to place API in the position it would have occupied absent TMI's delinquent marketing efforts, and yields an amount that exceeds the

---

[8] *See* Declaration of Whitney Schechter, at ¶¶ 4, 5 (Ex. 1 hereto). Although the allegations in API's complaint are alone sufficient to support the amount in controversy requirement, "the Court can consider material outside of the pleadings when determining whether it has jurisdiction." *See Sharpe*, 580 F. Supp. 2d at 128.

requisite jurisdictional amount.[9] TMI's motion wholly ignores API's potential for additional recovery based on *unearned* revenues (which would have generated additional API royalties) caused by this separate TMI breach.

**3. API's claim of contract termination also has value in calculating the amount in controversy.**

Finally, the "value of the object of the litigation" should be construed also to include the API-TMI Agreement itself. API's complaint "seeks a declaration that API properly exercised its authority to terminate the API-Technomedia Agreement in response to TMI's repeated breaches," Compl. ¶ 56, detailing, in support, a series of contractual breaches by TMI, *see, e.g.*, Compl. ¶¶ 57, 58, 66. Accordingly, the effect of API's January 12, 2009 termination letter and, as a necessary consequence, the existence of an enforceable contract for the remaining — after January 12, 2009 — period of the contract, are in "controversy." *Id.*[10] Moreover, in an action for declaratory judgment, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the *consequences* which may result from the litigation." *Beacon Constr.*, 521 F.2d at 399 (emphasis added).

Here, a ruling in API's favor would declare that the API-TMI Agreement was properly terminated by letter dated January 12, 2009, *see, e.g.*, Compl., Prayer for Relief, ¶ 1(a), thereby eliminating the remaining three years of the contractual period. Those remaining years have a quantifiable value, which may be applied to satisfy the amount in controversy requirement. *See*

---

[9] The measure of "lost profits" may also be based on a "reasonable estimate of [plaintiff's] losses." *Bedell*, 506 A.2d at 205-06.

[10] TMI's motion demonstrates the controversy, by asserting that API and TMI "are parties" to an agreement. Mot. to Dismiss, at 1. In contrast, API's complaint alleges that the contract was terminated, Compl. ¶ 50, and the parties have no prospective obligations thereunder except as expressly survive the termination.

*Davis v. Am. Foundry Equip. Co.*, 94 F.2d 441, 443 (7th Cir. 1938) (holding, in declaratory judgment action involving the validity of a contract, that the entire value of the contract determined the amount in controversy); *see also Beacon Constr.*, 521 F.2d at 399 (same); *cf. Oglethorpe Power Corp. v. FERC*, 84 F.3d 1447, 1450 (D.C. Cir. 1996) (noting that power company had contractual claim based on both past damages and "the value of its expectancy with respect to . . . the remaining term of the contract").

The value of the remaining years of the API-TMI Agreement may be viewed either from the perspective of the royalties that API could reasonably expect to receive or the revenues TMI could reasonably expect from sales of API-branded, e-learning courses until 2012, when the initial term expired. *See Smith*, 593 F.2d at 1099 ("In assessing whether a complaint satisfies [the legal certainty standard], a court may look either to the value of the right that plaintiff seeks to enforce or protect or to the cost to the defendants to remedy the alleged denial."); *United States Jaycees v. Superior Court of the District of Columbia*, 491 F. Supp. 579, 581 (D.D.C. 1980) (same).

In either case, the complaint's uncontested allegations of royalty payments from the first quarter of 2007 to the first quarter 2008 provide a "reasonable basis on which to estimate" the contract's remaining value. *Sastry*, 585 A.2d at 1328. For instance, extrapolation of even the *lowest* quarterly royalty payment alleged in the complaint — $13,000 in 1Q2008, *see* Compl. ¶ 40 — over the next three years (or fourteen quarters) amounts to $182,000, comfortably eclipsing the amount in controversy requirement.

At a minimum, TMI has failed to show to a "legal certainty" that the potential recovery on these claims — whether viewed independently or taken together, *see Higashiguchi*, 109 F.3d at 1474 ("A declaratory judgment plaintiff may reach the jurisdictional amount by aggregating

its multiple claims against a single defendant.") — could not reach API's prediction that the amount in controversy requirement is met or exceeded.

* * *

In sum, "the governing law mandates generosity in evaluating the eligibility of a claim for federal jurisdiction." *Rosenboro*, 994 F.2d at 17. In fact, under the Supreme Court's "legal certainty" test, "jurisdiction exists unless it is legally impossible for the recovery to exceed the minimum." *Meridian Security*, 441 F.3d at 542. Thus, the complaint's good-faith assertion generally controls and "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Scherer*, 347 F.3d at 397.

As detailed above, API's complaint properly pled the amount in controversy necessary to vest diversity jurisdiction in this Court. *See Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 24 (D.D.C. 1997) ("[W]hen confronted at the outset with the defendant's motion to dismiss for want of amount in controversy . . . it is sufficient if the plaintiff can show that the case *can* go for more than the monetary minimum." (emphasis original) (quotations omitted)). TMI's motion to dismiss misapprehends the nature of API's claim for unpaid royalties and wholly ignores the complaint's damages and contract termination claims. Resolving any doubts in favor of the complaint, as is required on a motion to dismiss, TMI has thoroughly failed to show that API's prediction that "the amount in controversy exceeds $75,000," Compl. ¶ 4, "is so far-fetched . . . that it can be said to a legal certainty that it could not reasonably occur," *Rosenboro*, 994 F.2d at 18.[11]

[11] In the event that this Court finds API's jurisdictional allegations to be inadequate, API requests leave to amend the complaint with further allegations of the controverted amount. *E.g.*, *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D.D.C. 1999) (holding that "a plaintiff (continued…)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order denying Defendant's motion.

Respectfully submitted,

/s/ Eric C. Bosset________

Eric C. Bosset
D.C. Bar No. 414283
Bradley K. Ervin
D.C. Bar No. 982559
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Phone: (202) 662-6000
Fax: (202) 662-6291

Harry M. Ng
D.C. Bar No. 416604
General Counsel
Michael R. See
D.C. Bar No. 498704
Senior Counsel
AMERICAN PETROLEUM INSTITUTE
Office of the General Counsel
1220 L Street, N.W.
Washington, D.C. 20005
Phone: (202) 682-8260

Attorneys for American Petroleum Institute

Dated: June 3, 2009

---

may amend jurisdictional allegations to show that jurisdiction does in fact exist" and "cure a defective jurisdictional allegation.").