**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**TECHNOMEDIA INTERNATIONAL, INC.,**<br><br>**Defendant/Counterclaim Plaintiff.** | ) | **Civ. No. 1:09-cv-00529 (RJL)** |

**AMERICAN PETROLEUM INSTITUTE'S MOTION TO (1) DISMISS COUNTS 1-3 AND 5-6 OF TECHNOMEDIA'S AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6); AND (2) STRIKE ALLEGATIONS OF THE AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(f)**

Plaintiff/counterclaim defendant American Petroleum Institute ("API") hereby moves for the following relief under Fed. R. Civ. P. 12:

1. API moves to dismiss Counts 1-3 and 5-6 of the Amended Counterclaim filed by defendant/counterclaim plaintiff Technomedia International, Inc. ("Technomedia"), pursuant to Fed. R. Civ. P. 12(b)(6); and

2. API moves to strike scandalous, false and irrelevant allegations contained in Technomedia's Amended Counterclaim, pursuant to Fed. R. Civ. P. 12(f), concerning any alleged association between API and Ecoman or between API and the Islamic Republic of Iran — including, without limitation, the allegations contained at pages 1 and 2, and paragraphs 30, 31, 32, 33, 34, 35, 77, 80 and 87 of the Amended Counterclaim. Pursuant to Local Civil Rule 7(m), counsel for API conferred with counsel for Technomedia regarding the Rule 12(f) issue, but counsel for Technomedia has not consented to the relief hereby requested.

API files this consolidated motion seeking the foregoing relief pursuant to Fed. R. Civ. P. 12(g). Separate memoranda of points and authorities addressing the Rule 12(b)(6) and Rule 12(f) issues are attached as Attachments 1 and 2 respectively. A proposed order is also attached.

Dated: July 17, 2009

Respectfully submitted,

*/s/ Eric C. Bosset*_____

Eric C. Bosset
D.C. Bar No. 414283
Dennis B. Auerbach
D.C. Bar No. 418982
Bradley K. Ervin
D.C. Bar No. 982559
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Phone: (202) 662-6000
Fax: (202) 662-6291

# Attachment 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE,** | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| **v.** | ) | **Civil Action No. 1:09-cv-00529-RJL** |
| **TECHNOMEDIA INTERNATIONAL, INC.,** | ) | |
| **Defendant/Counterclaim Plaintiff.** | ) | |

**AMERICAN PETROLEUM INSTITUTE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS 1-3 AND 5-6 OF TECHNOMEDIA'S AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

On June 24, 2009, American Petroleum Institute ("API") moved to dismiss the tort causes of action of Technomedia's Counterclaim. Technomedia filed an Amended Counterclaim on July 6 in an effort to avoid dismissal. As shown below, however, the Amended Counterclaim is also patently deficient. In particular, none of Technomedia's tort claims states a valid claim against API. Technomedia had its chance to cure the defects of its original pleading, but has failed to do so. Thus, its makeweight tort claims should be dismissed with prejudice. *See, e.g., Adams v. Pension Benefit Guar. Corp.*, 332 F. Supp. 2d 231, 239 (D.D.C. 2004) (dismissing first amended complaint with prejudice); *Anderson v. D.C. Pub. Defender Serv.*, No. 90-2090, 1993 U.S. Dist. LEXIS 8163, at *8 (D.D.C. June 16, 1993) (same)[1]; *United States ex*

---

[1] *Aff'd in relevant part*, 1993 U.S. App. LEXIS 33836, at *1-2 (D.C. Cir. Oct. 12, 1993), *cert. denied*, 510 U.S. 1123 (1994).

*rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (affirming trial court's determination that amended complaint should be dismissed with prejudice because "pleadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right. One opportunity to amend, in the face of motions that spelled out the asserted defects in the original pleadings, was sufficient.").

This is a contract case. API and Technomedia were parties to an agreement under which Technomedia was obligated to supply and promote, under the "API University" mark, certain computer-based training courses for workers in the oil and gas industries, and to pay royalties to API based on course sales. API terminated the contract because of Technomedia's repeated and material breaches (culminating in the loss of Technomedia's license to supply over three-quarters of the specified training courses, which it did not own). Based on a forum-selection clause in the agreement, API filed the instant action seeking, *inter alia*, a declaration that the contract termination was authorized and a court order requiring Technomedia to pay any royalties owed API based on an audit.

Technomedia now contends that API violated the contract. Instead of simply asserting a breach of contract, however, Technomedia has sought to dress up its contract claim as a grab bag of torts — defamation, disparagement, intentional interference with economic advantage, misappropriation of trade secrets, fraudulent inducement, and breach of fiduciary duty — all in an apparent effort to qualify for punitive damages, special damages, and attorneys' fees.

As explained more fully below, Technomedia's Amended Counterclaim offers only vague and conclusory allegations that fail as a matter of law to plead tortious conduct. Technomedia has not alleged facts sufficient to support the tort actions, and the facts it does

include plainly fail to state cognizable torts. For example, Technomedia's defamation/ disparagement claim is based on letters that were addressed only to Technomedia, not to any third party. Technomedia tries to plead around this fatal defect by alleging that one of the letters was shown to others within API, but such intra-company communication cannot support a claim for defamation or disparagement. Further, Technomedia's claim for intentional interference alleges commercial injury caused by API's termination of the parties' contract. Technomedia cannot repackage a claim for breach-of-contract damages as a claim for tort. Technomedia's other attempts to manufacture grounds for recovery in tort similarly fall short for the reasons set forth below. Accordingly, all of Technomedia's tort claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[2]

## I. THE AMENDED COUNTERCLAIM

The Amended Counterclaim ("Am. Countercl.") focuses on an Agreement to Develop and Market API-Branded Products and Services in Electronic Media Formats between API and Technomedia, dated March 17, 2005 (the "API-Technomedia Agreement"), which API allegedly breached through wrongful termination. *E.g.* Am. Countercl. at 1 and ¶ 73. Under the API-Technomedia Agreement, API granted Technomedia a limited and non-transferable license to use API's trademarks in the development, promotion and provision of certain e-learning materials to the worldwide petroleum and gas industry. API-Technomedia Agreement ¶ 11.[3]

---

[2] API is not moving for dismissal of the Amended Counterclaim's fourth cause of action for breach of contract. API is not required to file an Answer to Technomedia's contract claim until its motion to dismiss is resolved. *See, e.g., Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001); *Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247, 250 (W.D.N.Y. 1998).

[3] The API-Technomedia Agreement is attached as Exhibit A. Since that contract is specifically referenced and relied upon by Technomedia, the Court may consider the document in deciding API's motion to dismiss. *See Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 5 (D.D.C. 2007); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002); *see*

API terminated the API-Technomedia Agreement through a notice of termination in January 2009. Am. Countercl. ¶ 23(c). According to the Amended Counterclaim, API's termination was prompted by the actions of a company called TWL Knowledge Group, Inc. ("TWL"), and by TWL's principals, Patrick Quinn and Dennis Cagan. The Amended Counterclaim alleges that in January 2007, Technomedia and TWL formed a joint venture known as TWL Skill Ventures, LLC ("Skill Ventures") to distribute API-branded e-learning materials. *Id.* ¶¶ 11, 12, 17. Technomedia alleges that it partnered with TWL to create Skill Ventures in order to promote Technomedia's allegedly confidential business concepts. *Id.* ¶ 17.

Soon after Skill Ventures was formed in January 2007, TWL, Cagan and Quinn allegedly began engaging in a campaign to disparage Technomedia so that it could "usurp" the API-Technomedia Agreement. Am. Countercl. ¶ 20. According to the Amended Counterclaim, Cagan and Quinn made defamatory statements to API, including that Technomedia had been raided by the financial crimes unit of the local police department and by the FBI. *Id.* ¶ 22. This campaign of disparagement allegedly resulted in API wrongfully terminating the API-Technomedia Agreement in January 2009. *Id.* ¶ 23(c).

Technomedia also alleges that, beginning in 2007, API breached a predecessor Nondisclosure Agreement between the parties dated August 25, 2004 (the "Nondisclosure Agreement").[4] Under the Nondisclosure Agreement, the parties agreed that Technomedia may provide certain confidential information to API to "assist API in evaluating Technomedia

---

*also Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (in deciding Rule 12(b)(6) motion, court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.").

[4] The Nondisclosure Agreement was expressly superseded by the API-Technomedia Agreement:

> This Agreement sets forth the entire agreement between the parties. This Agreement supersedes all prior proposals, understandings or agreements, oral or written, relating thereto . . . (Exhibit A ¶ 42.)

products and services." Nondisclosure Agreement, first "Whereas" clause. *See* Exhibit B.[5] The Amended Counterclaim alleges that Technomedia provided confidential material to API under the Nondisclosure Agreement and that the material in question constitutes trade secrets. Am. Countercl. ¶¶ 36-47. API allegedly disclosed such trade secrets to TWL, Cagan, Quinn, and unidentified third parties in violation of the contract. *Id.* ¶ 39. The Amended Counterclaim makes this allegation, despite acknowledging that Technomedia itself shared its trade secrets with TWL. *Id.* ¶ 19.

Technomedia seeks to derive five separate tort claims out of API's alleged breaches of contract:

- Technomedia asserts that API defamed and disparaged it by sending it a "defamatory letter of termination" in January 2009 regarding the API-Technomedia Agreement and by sending it a notice of breach of contract dated June 5, 2008, which it contends contained defamatory content. Technomedia also alleges that API's counsel made a defamatory and disparaging communication to the Carrollton Texas police department on March 18, 2008 (Am. Countercl. ¶¶ 23, 54-70);

- Technomedia alleges that, by terminating the API-Technomedia Agreement and other alleged acts, API intentionally interfered with Technomedia's economic advantage (Am. Countercl. ¶¶ 82-84);

- Technomedia contends that API's alleged disclosure of confidential information in alleged violation of the Nondisclosure Agreement constitutes tortious misappropriation of trade secrets (Am. Countercl. ¶¶ 36-47);

- Technomedia asserts that API never intended to abide by its obligations under the Nondisclosure Agreement and that Technomedia was thus fraudulently induced to enter into that contract (Am. Countercl. ¶¶ 48-53); and

---

[5] Because Technomedia references and relies on the Nondisclosure Agreement in its Amended Counterclaim, the Court may consider the document in resolving API's motion to dismiss. *See* note 3, *supra*.

- Technomedia alleges that API breached fiduciary duties in connection with the API-Technomedia Agreement and the Nondisclosure Agreement (Am. Countercl. ¶¶ 85-88).

Technomedia seeks special damages, exemplary damages, punitive damages, attorney's fees and injunctive relief based on these alleged torts. Am. Countercl. ¶¶ 47, 70, 88, 93-98.

## II. ARGUMENT

Technomedia's tort claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). "A court may dismiss under Rule 12(b)(6) if, accepting the allegations in the complaint as true, the plaintiff has nonetheless failed to state plausible grounds for relief." *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009). While a complaint or counterclaim "is construed liberally in the plaintiff's favor," the district court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.; accord Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 5 (D.D.C. 2007) ("the court is not bound to accept the legal conclusions of the non-moving party").

Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *accord Taylor v. Dist. of Columbia*, 606 F. Supp. 2d 93, 95-96 (D.D.C. 2009). A complaint does not suffice if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Id.* at 1950. A complaint or counterclaim ultimately must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (citation omitted); *see also Lutz v. United States*, No. 06-1177, 2007 U.S. Dist. LEXIS 48114, at *12 (D.D.C. July 5, 2007) (to survive motion to dismiss, plaintiff must make a "'showing', rather than a blanket assertion, of entitlement to relief").

Here, the Counterclaim is replete with conclusory allegations — but wanting of facts — that API engaged in tortious conduct. The facts pleaded simply allege a breach of contract and do not support Technomedia's tort claims. Accordingly, the tort causes of action must be dismissed for failure to state a claim. Technomedia's defamation and fraud claims must be dismissed for the additional reason that they are not pleaded with the specificity required for such claims.

API submits that District of Columbia law governs Technomedia's tort claims under the "substantial interest" test applied by D.C. courts in tort cases because: API is located in the District of Columbia (Am. Countercl. ¶ 3); Technomedia alleges that much of the alleged tortious conduct occurred within the District (*e.g.*, alleged publication of defamatory statements within API — *id.* ¶ 23(d)); Technomedia's reputation was allegedly injured in the District of Columbia, where publication of allegedly defamatory communications within API allegedly occurred; and the parties' relationship was centered in the District, as evidenced by the D.C. choice of law and D.C. forum-selection provisions of the API-Technomedia Agreement (Ex. A ¶ 45) and the Nondisclosure Agreement (Ex. B ¶ 6).[6] *See Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004). As explained below, however, dismissal of the tort claims is

---

[6] The contracts provide that the only proper venue for any litigation "arising under" the agreements shall be in the District. Ex. A ¶ 45; Ex. B ¶ 6.

appropriate regardless of whether the Court applies the law of the District of Columbia or the law of Texas, where Technomedia is located (Am. Countercl. ¶ 2).

### A. Technomedia's Defamation Claim Should Be Dismissed (Third Cause of Action).

A claim for defamation must be pleaded with particularity. *See, e.g., Vreven v. AARP*, 604 F. Supp. 2d 9, 15-16 (D.D.C. 2009). In order to state a claim, a plaintiff must plead specific defamatory comments, by pleading the "'time, place, content, speaker and listener of the alleged defamatory material.'" *Coates v. Law Sch. Adm. Council*, No. 05-0641, 2005 U.S. Dist. LEXIS 35217, at *6 (D.D.C. Oct. 25, 2005), quoting *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 494 (D.D.C. 1994); *accord TracFone Wireless, Inc. v. Carson*, No. 07-1761, 2008 U.S. Dist. LEXIS 68673, at *24-27 (N.D. Tex. Aug. 28, 2008).

While the Amended Counterclaim describes various alleged defamatory statements by TWL's principals Cagan and Quinn, it alleges only two communications by API with anything close to the requisite specificity: the January 2009 notice of termination of the API-Technomedia Agreement, which Technomedia characterizes as a "defamatory letter of termination of contract;" and the June 5, 2008 notice of breach of contract. Am. Countercl. ¶¶ 23(c) - (f). As demonstrated below, however, these letters cannot support a defamation claim as a matter of law.[7]

#### 1. The January 2009 and June 2008 Letters Were Not Published to any Third Party.

Mere publication of an allegedly defamatory statement to the party allegedly defamed is not actionable. *See, e.g., Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (to prove

[7] We address in subsection 5 below a third allegedly defamatory communication by API — a March 18, 2008 telephone call by API's counsel to the Carrollton Texas Police Department. As demonstrated in subsection 5, the claim based on the March 18, 2008 phone call is not pleaded with the requisite particularity and, in any event, is (i) barred by the statute of limitations and (ii) protected by a qualified privilege applicable to communications with law-enforcement authorities.

defamation in the District of Columbia, plaintiff must allege and prove publication to a third party); *Gharib v. Wolf*, 518 F. Supp. 2d 50, 57 (D.D.C. 2007) (same); *Rodriguez v. NBC Bank*, 5 S.W.3d 756, 766 (Tex. Ct. App. 1999) (same under Texas law). A defamation claim must be dismissed where the plaintiff fails to plead with particularity that an allegedly defamatory statement was published to an identifiable third party. *Vreven*, 604 F. Supp. 2d at 15-16; *Coates*, 2005 U.S. Dist. LEXIS 35217, at *9.

The January 2009 and June 2008 letters at issue here are communications from API's Chief Financial Officer addressed to Greg Bihn, President of Technomedia. *See* Exhibits C, D.[8] There is no indication that API sent the letters to anyone outside of Technomedia, and the Amended Counterclaim makes no such allegation. Because the letters were not sent to any third party, they cannot support Technomedia's defamation claim.[9]

**a. Alleged Publication Within API Cannot Save Technomedia's Claim.**

Technomedia's attempt to get around this fatal defect by alleging that the June 5, 2008 letter was published within API (Am. Countercl. ¶ 23(d)) is unavailing. Intra-corporate communications regarding a matter of concern to the corporation are presumed to be privileged against claims of defamation, and the presumption can only be overcome if the plaintiff pleads facts evidencing that defendant acted with malice. *See Turner v. Federal Express Corp.*, 539 F.

---

[8] The letters are not attached to the Counterclaim, but are specifically referenced and relied upon by Technomedia so may be considered by the Court in deciding API's motion to dismiss. *See* note 3, *supra*.

[9] Technomedia's claim that the June 5, 2008 letter was published to Technomedia employees (Am. Countercl. ¶ 23(d)(vii)) does not satisfy the requirement of publication to a party other than the party allegedly defamed. The letter was addressed only to Technomedia's President, Mr. Bihn. The allegation that Mr. Bihn's secretary saw the letter does not satisfy the publication-to-a-third-party requirement because transmission through Mr. Bihn's secretary was "incidental and reasonably necessary to a communication" with the party allegedly defamed. *See Restatement (Second) Torts* § 604 cmt. d (1977). Moreover, since the letter was addressed only to Mr. Bihn, any further transmission within Technomedia was by Technomedia itself, not by API.

Supp. 2d 404, 409 (D.D.C. 2008) (dismissing defamation claim because, *inter alia,* plaintiff had "not overcome the presumptive qualified privilege for an 'intra-company'" communication); *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 879 & n.8 (D.C. 1998) (noting presumptive privilege for "intracompany communications" and holding that it is "'incumbent on the party complaining to show malice'") (citation omitted); *accord Stoddard v. West Telemarketing, L.P.*, 316 Fed. Appx. 350, 353 (5th Cir. 2009) (Texas law).

To withstand a motion to dismiss based on the privilege for intra-company communications, a plaintiff may not rest on conclusory allegations of malice. Rather, the plaintiff must allege specific facts supporting its malice claim. *See Stith v. Chadbourne & Parke,* LLP, 160 F. Supp. 2d 1, 10 (D.D.C. 2001) (defamation claim could not survive motion to dismiss where plaintiff "failed to allege any facts to support a claim of malice"); *Borninski v. Williamson*, No. 302CV10141, 2003 WL 22952571, at *7 (N.D. Tex. July 31, 2003) (dismissing defamation claim because Plaintiff "cites no facts in his amended complaint that demonstrate malice....conclusory allegations are not sufficient"); *see also Oparaugo*, 884 A.2d at 77 ("we decided long ago that bare statements of legal conclusions are insufficient to state a claim for libel").

Indeed, in its recent *Iqbal* decision, the Supreme Court expressly held that a conclusory allegation that defendant acted "willfully and maliciously" is "not entitled to the assumption of truth" under *Twombly* — and thus is not sufficient to overcome a claim of qualified immunity asserted in a motion to dismiss. *Iqbal*, 129 S. Ct. at 1951.

Here, Technomedia formulaically recites the word "malice" (Am. Countercl. ¶¶ 23(e), 59, 60), but it offers no facts to back up the allegation. Technomedia's assertion that API subsequently would not retract the June 5, 2008 letter after Technomedia advised API that

statements in the letter were false (Am. Countercl. ¶¶ 59, 60) is plainly insufficient because a plaintiff must allege facts evidencing malice at the time the allegedly defamatory statements were made. *See, e.g., Secord v. Cockburn*, 747 F. Supp. 779, 792 (D.D.C. 1990) ("[T]he existence or non-existence of . . . malice must be determined as of the date of publication")*; East Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 60 (Tex. Ct. App. 1998) ("plaintiff must prove that the defendant's statements were actuated, inspired, or colored by actual or express malice, existing at the time of publication") (emphasis added). Thus, on this basis alone, Technomedia's defamation claim fails.

**b. Technomedia's Alleged "Self Publication" Cannot Save Its Claim.**

Technomedia's allegation that it was required to "self-publish" the alleged defamations contained in the January 2009 and June 2008 letters (Am. Countercl. ¶¶ 23(g) - (i)) also cannot save its claim.

As a threshold matter, the alleged self-publication is not pleaded with the requisite particularity: Technomedia does not allege when self-publications occurred, to whom they were made, or the content of its alleged statements to the unidentified third parties. *See Coates*, 2005 U.S. Dist. LEXIS 35217, at *6 (plaintiff must plead the "time, place, content, speaker and listener of the alleged defamatory" matter) (citation omitted).

Moreover, self-publication cannot be the basis for a claim of defamation under D.C. law. *See Austin v. Howard Univ.*, 267 F. Supp. 2d 22, 29 (D.D.C. 2003) ("Although there are jurisdictions which recognize a cause of action for self-defamation, the District of Columbia is not one of those jurisdictions."). Nor does the alleged self-publication support a defamation action in Texas, if that law applies. It is not clear that an action for self-defamation is ever viable

under Texas law,[10] but even those few Texas cases that have recognized the theory have held that self publication is actionable only if, *inter alia*, the party alleging defamation was unaware of the purportedly defamatory nature of the statement at the time it self published. *See Austin v. INET Techs., Inc.*, 118 S.W.3d 491, 499 (Tex. Ct. App. 2003) (self-publication actionable as defamation only if "the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature"). While Technomedia formulaically recites that it was "unaware" of the meaning of the words it allegedly published to unidentified third parties, it offers no facts whatsoever to support that inherently implausible assertion.[11]

Because API sent the January 2009 and June 2008 letters only to Technomedia — the party allegedly defamed — the defamation claim must be dismissed.

2. The January 2009 and June 2008 Letters Are Not Defamatory.

Separately, Technomedia's defamation claim fails because neither the January 2009 letter nor the June 2008 letter is defamatory as a matter of law.

A statement is defamatory only if "it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006) (citation and internal quotation marks omitted); *accord Gharib*, 518 F. Supp. 2d at 56. "[A]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous or ridiculous." *Clawson*, 906 A.2d at 313 (citation and internal quotation marks

---

10 *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 n.5 (5th Cir. 1995).

11 Moreover, to the extent Technomedia claims that it was required to self-publish demands that it not enter into long-term contracts (Am. Countercl. ¶ 23(g)), such communication is not capable of a defamatory meaning as a matter of law and thus could not support Technomedia's defamation claim. *See* subsection 2, *infra*.

omitted); *accord Bennett v. U.S. Chess Fed'n*, 468 F. Supp. 2d 79, 89 (D.D.C. 2006); *Dolcefino v. Turner*, 987 S.W.2d 100, 109 (Tex. Ct. App. 1999). Whether a statement is capable of defamatory meaning is a question of law, which the court may decide on a motion to dismiss. *Bennett*, 468 F. Supp. 2d at 89.

**a. The January 2009 Letter Is Not Defamatory.**

The January 2009 Notice of Termination is not defamatory under the applicable standard. It merely states that Technomedia breached its contract with API and enumerates those breaches. *See* Exhibit C. The letter does not make Technomedia appear "odious, infamous or ridiculous," and thus cannot constitute defamation as a matter of law. *See Bennett*, 468 F. Supp. 2d at 89 (dismissing defamation claim because oral communications, letters and emails alleged in complaint did not meet "odious, infamous or ridiculous" standard).

**b. The June 2008 Letter Is Not Defamatory.**

The June 5, 2008 letter also is not defamatory. In determining whether a statement is capable of a defamatory meaning, it must be construed as a whole, in light of surrounding circumstances, based upon how a person of ordinary intelligence would perceive the entire statement. *See Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004).

The June 5, 2008 letter is, on its face, a legal "Notice of Breach of Contract," which summarizes Technomedia's breaches of the API-Technomedia Agreement. *See* Exhibit D. Technomedia alleges that this letter was defamatory because it accuses Technomedia of criminal acts. Am. Countercl. ¶ 23(d). In fact, however, the letter simply refers to Technomedia's obligation under paragraph 32 of the API-Technomedia Agreement to keep API informed of any threats of litigation or claims that third parties' rights have been violated.

Exhibit D at 1-2. The letter does not accuse Technomedia of any crime. Rather, it states that Technomedia breached paragraph 32 of the API-Technomedia Agreement by failing to notify API regarding allegations of wrongdoing made by TWL. *Id.* ¶ 5. In that context, the letter cannot be deemed defamatory. *See, e.g.*, *Fleming v. AT & T Info. Serv., Inc.*, 878 F.2d 1472, 1475-76 (D.C. Cir. 1989) (statement that plaintiff "might have been involved in" crime does not meet "high standard for judging a statement slanderous").

3. The January 2009 and June 2008 Letters Are Covered by the Absolute Privilege for Communications Preliminary to a Judicial Proceeding.

Technomedia's defamation claim should be dismissed for the additional reason that "[a] party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if the matter has some relation to the proceeding." *Restatement (Second) of Torts* § 587 (1977); *accord Oparaugo*, 884 A.2d at 79 ("[t]his jurisdiction, like the majority of other jurisdictions, has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding") (citation and internal quotation marks omitted); *Washburn v. Lavoie*, 437 F.3d 84, 89 n.4 (D.C. Cir. 2006) (same); *Gharib*, 518 F. Supp. 2d at 57 (same); *James v. Brown,* 637 S.W.2d 914, 916-17 (Tex. 1982) (same under Texas law); *Bennett v. Computer Assocs. Int'l*, 932 S.W.2d 197, 201 (Tex. Ct. App. 1996) (Texas law). The privilege applies even if the communication at issue does not specifically mention the possibility of future legal proceedings. *See Marsh v. Hollander*, 339 F. Supp. 2d 1, 6-8 (D.D.C. 2004) (allegedly defamatory letter covered by "preliminary to possible judicial proceedings" privilege even though it did not reference possible lawsuit).

API's January 2009 termination letter is a communication preliminary and directly related to a proposed judicial proceeding — this very lawsuit. In its Complaint, API

alleges that Technomedia repeatedly breached the API-Technomedia Agreement, and seeks a declaratory judgment that API was entitled to terminate the contract based on these breaches. Docket No. 1, ¶¶ 1-3.[12] Technomedia acknowledges that API's January 2009 letter is the instrument that effected the contract termination at issue in API's declaratory judgment action. Am. Countercl. ¶ 23(c). Because the letter is a communication preliminary to a possible judicial proceeding, it is absolutely privileged and cannot give rise to any defamation claim.

Though more removed in time from the initiation of this lawsuit, API's June 5, 2008 letter is also privileged from serving as the basis of any defamation claim. Titled "Notice of Breach of Contract," the letter states that Technomedia is in breach of the API-Technomedia Agreement, demands that such breaches be cured within 30 days, and indicates that "if this breach is not corrected within the thirty (30) days, API will take appropriate action to protect its rights." Exhibit D at 1. Courts have held that such demand letters also fall within the privilege. *See, e.g., Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 341 (D.C. 2001); *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. Ct. App. 2005).

4. Technomedia's Claim Based on the June 2008 <u>Letter Is Barred by the Statute of Limitations.</u>

Technomedia's reliance on the June 5, 2008 letter is also foreclosed by the District's one-year statute of limitations for defamation actions. *See* D.C. Code § 12-301(4).[13] "District of Columbia courts adhere strictly to the one year limitation." *Wilson v. Prudential Financial*, No. 03-2313, 2004 WL 2451412, at *6 (D.D.C. Oct. 18, 2004). The District's statute

---

[12] The Court may take judicial notice of the subject matter of API's Complaint in resolving this motion to dismiss. *See, e.g., Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998).

[13] "A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." *National R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005), *aff'd*, 249 Fed. Appx. 832 (D.C. Cir. 2007).

of limitations applies here, regardless of whether D.C. or Texas substantive law is applicable to Technomedia's claims. *See, e.g., Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 111 (D.D.C. 2008) (District's choice of law rules treat statutes of limitations as procedural, and thus "mandate application of the District's own statute of limitations" in diversity cases) (citation and internal quotation marks omitted); *Wilson*, 2004 WL 2451412, at *6 n.4 (same).[14]

The statute of limitations for a defamation claim accrues at the time of publication. *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298-99 (D.C. 2001).[15] Technomedia alleges that the June 2008 letter was published within API on or before June 5, 2008, then republished within API on June 24, 2008. Am. Countercl. ¶¶ 23(d) - (f). The Amended Counterclaim, however, was not filed until July 6, 2009, more than one year after the alleged publications. Accordingly, the statute of limitations bars Technomedia's claim.

Technomedia's claim based on the June 5, 2008 letter does not relate back to the date of the original Counterclaim because Technomedia did not allege that letter as a defamatory communication in its original Counterclaim (Docket No. 18). Under Fed. R. Civ. P. 15(c), an amendment "relates back" only if it asserts a claim that "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "When plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c) will not authorize relation back." 6A Wright, Miller & Kane, *Federal Prac. & Proc.* § 1497, at 70-73 (2009).

Each allegedly defamatory statement must be viewed separately for statute of limitations purposes, and constitutes a different "occurrence" or "transaction" under Rule 15(c).

---

[14] Texas also has a one-year statute of limitations for defamation claims. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a).

[15] *See also Roberts v. Davis*, 160 S.W.3d 256, 261 (Tex. Ct. App. 2005).

*See, e.g., Caudle v. Thomason*, 942 F. Supp. 635, 641 (D.D.C. 1996); *see also Wallace,* 715 A.2d at 882-83; Wright Miller, § 1497, at 73-74 ("amendments alleging the separate publication of a libelous statement . . . may be subject to the defense of statute of limitations because of a failure to meet the transaction standard").[16] Accordingly, an amended claim alleging an entirely new defamatory communication will not relate back to the date of the original pleading. *See, e.g., Caudle*, 942 F. Supp. at 641 ("Because the slander claim involves publications entirely distinct from the publication [alleged in the original complaint] and made to a number of individuals not mentioned in the original complaint, the Court finds that the slander claim does not relate back to the filing of the original complaint"); *Foretich v. Glamour*, 753 F. Supp. 955, 962 (D.D.C. 1990) ("Courts have repeatedly refused . . . to relate back a defamation claim based on separate republication where the original complaint did not allege such republication").[17] It is irrelevant that the newly alleged communication may have the same or similar content to a communication alleged in the original pleading.[18]

Because API's June 5, 2008 letter was not mentioned in the Original Counterclaim, Technomedia's amended defamation claim based on that letter cannot relate back and is barred by the one-year statute of limitations.

---

16 *See also Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. Ct. App. 2007).

17 *Accord Texas Disposal Sys.*, 219 S.W.3d at 587 (defamatory communication alleged for first time in amended pleading did not relate back because "Texas law treats each alleged defamatory publication as a single transaction with an independent injury").

18 *See Caudle*, 942 F. Supp. at 640-41; *see also Texas Disposal Sys.*, 219 S.W.3d at 587 ("The test is not whether the newly asserted claims are otherwise part of the same general course or pattern of conduct as those originally pled"); *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 186 (D. Kan. 1989) ("While the content of the defamatory statements was the same or similar to the content of statements alleged to be defamatory in plaintiff's original petition, the new counts named new parties to whom the alleged defamatory words were published as well as new dates of publication. Allowing these added claims to relate back would, in effect, allow the plaintiff to amend around the statute of limitations, a result clearly not contemplated by Rule 15(c).").

5. API's Communication with the Carrollton, Texas Police in March 2008 Cannot Support Technomedia's Defamation Claim.

In addition to citing the January 2009 and June 2008 letters, Technomedia asserts that API's attorneys made defamatory statements to the Carrollton, Texas police on March 18, 2008 (Am. Countercl. ¶ 62). Technomedia does not, however, allege the content of the alleged defamatory statements and the claim thus is not pled with the particularity necessary for defamation actions. *See, e.g., Coates*, 2005 U.S. Dist. LEXIS 35217, at *6. Moreover, a corporation can only be defamed if the communication "tends to prejudice it in the conduct of its business or to deter others from dealing with it." *Restatement (Second) of Torts* § 561(a) (1977). Technomedia alleges no facts showing that the March 2008 communication had any such effect here. Accordingly, it cannot support Technomedia's defamation claim.

In any event, Technomedia's claim based on the March 2008 communication is also barred by the statute of limitations, for the reasons discussed in the previous subsection. The communication occurred on March 18, 2008 — more than one year before Technomedia filed the Amended Counterclaim on July 6, 2009. Nor can Technomedia argue "relation back," because the original Counterclaim, like the Amended Counterclaim, was also filed more than one year after March 18, 2008. The claim is thus time barred.[19]

[19] API's communication with the Carrollton, Texas police department also cannot support Technomedia's defamation claim because communications with law enforcement official are privileged. *See Stith*, 160 F. Supp. 2d at 9 (communication with police regarding possible employee wrongdoing was entitled to qualified privilege); *see also Gonzales v. City of Corpus Christi*, No. 05-280, 2006 WL 1406852, at *6 (S.D. Tex. May 19, 2006), *aff'd Gonzales v. H.E. Butt Grocery Co.*, 226 Fed. Appx. 342 (5th Cir. 2007); *Campbell v. City of San Antonio*, 43 F.3d 973, 980 (5th Cir. 1995). Technomedia has not alleged malice in connection with this communication — or made any other attempt to overcome the qualified privilege that applies to communications with law enforcement. *See Stith*, 160 F. Supp. 2d at 10 ("fail[ure] to allege any facts to support a claim of malice" renders defamation claim unable to withstand motion to dismiss where qualified privilege exists).

**B. Technomedia's Disparagement Claim Should Be Dismissed (Third Cause of Action).**

Technomedia's Third Cause of Action also includes a claim for "disparagement." This claim is substantially the same as the defamation claim and must be dismissed for substantially the same reasons.

1. As with an allegedly defamatory communication, an allegedly "disparaging" statement must have been published to a third party, without privilege. *See Q Int'l Courier, Inc. v. Seagraves*, No. 95-1554, 1999 WL 1027034, at *7 (D.D.C. Feb. 26, 1999); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 924-25 (Tex. Ct. App. 2006).[20] As shown above, Technomedia has not alleged any unprivileged publication of the January 2009 or June 2008 letters to a third party here.

2. A disparagement claim cannot be sustained when the alleged disparaging statement is not capable of defamatory meaning. *See, e.g., Clawson*, 906 A.2d at 317 (affirming dismissal of disparagement claim where communication was not defamatory); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628, 639 n.83 (Tex. Ct. App. 2007, pet. denied). As demonstrated, the January 2009 and June 2008 letters are legal notices to Technomedia regarding breaches of the API-Technomedia Agreement and are not defamatory.[21]

---

[20] The privileges applicable to defamation claims also apply to claims for business disparagement (also known as injurious falsehood). *See, e.g., Restatement (Second) of Torts* §§ 635, 646A (1977).

[21] Technomedia also alleges that a document it refers to as the "Schechter Document" was disparaging. Am. Countercl. ¶ 29. The allegedly "disparaging" statement contained in the document is that "TWL Skill Ventures was the exclusive distributor for API eLearning products." *Id.* ¶ 29(a). This statement, however, is not disparaging of Technomedia because it is not capable of defamatory meaning. Moreover, a disparaging statement must be "of and concerning" plaintiff. *See, e.g., Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir.), *cert. denied*, 528 U.S. 1021 (1999); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 427 (Tex. Ct. App. 1997). The statement that TWL is the exclusive distributor of API eLearning products does not name or reference Technomedia.

3. Special damages are a necessary element of a disparagement claim[22] and Technomedia has not pleaded special damages with anything close to the specificity mandated by Fed. R. Civ. P. 9(g). While the Amended Counterclaim asserts in conclusory fashion that Technomedia suffered special damages (Am. Countercl. ¶ 70), Rule 9(g), requires a plaintiff to "allege actual damages with particularity and specify facts showing that such special damages were the natural and direct result of the defendant's conduct." *Browning v. Clinton*, 292 F.3d 235, 245-46 (D.C. Cir. 2002) (citation omitted). A plaintiff "can satisfy this pleading obligation by identifying either particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication." *Id.*; *accord 50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *5-6 (W.D. Tex. May 20, 1997). Technomedia has alleged neither, and its disparagement claim must thus be dismissed.

4. A "disparaging" statement must have been made with malice. *Q Int'l Courier*, 1999 WL 1027034, at *7; *Marketshare Telecom*, 198 S.W.3d at 924-25. As demonstrated, the Amended Counterclaim contains only a conclusory allegation of malice, which is plainly insufficient under *Twombly* and *Iqbal*.

5. Technomedia's disparagement claim based on the June 5, 2008 letter and the March 18, 2008 communication with the Carrollton Texas police — like its defamation claim based on those communications — is barred by the statute of limitations. The disparagement and defamation claims are closely intertwined — they are based on the same underlying facts and are asserted as part of the same Cause of Action. *See Mittleman v. United States*, 104 F.3d 410, 415-17 (D.C. Cir. 1997) (claim is "intertwined" with another claim when it is based on same underlying facts). Because the claims are intertwined and disparagement does not have its own

---

22 *See Q Int'l Courier*, 1999 WL 1027034, at *7; *Marketshare Telecom*, 198 S.W.3d at 924-25.

specific limitation period under D.C. law, the disparagement claim is subject to the District's one-year statute of limitations for defamation claims.[23] *See Browning*, 292 F.3d at 244 (where plaintiff asserts cause of action that is "intertwined with one having a prescribed limitations period" then prescribed limitation period applies to such claim). As such, the disparagement claim based on 2008 communications is time barred.

### C. Technomedia's Intentional Interference With Economic Advantage Claim Should Be Dismissed (Fifth Cause of Action).

Technomedia's intentional interference with economic advantage claim (Cause of Action 5) should likewise be dismissed. To the extent the claim is comprehensible at all, it appears to be that API's termination of the API-Technomedia Agreement caused commercial harm to Technomedia in respect of its dealings with certain third parties. *See* Am. Countercl.¶¶ 82-84.

Technomedia's vague and conclusory allegations that API's alleged breach of the API-Technomedia Agreement somehow interfered with its business opportunities are insufficient under *Twombly*. To state a claim for intentional interference, a plaintiff must plead the (i) existence of a valid business relationship or expectancy; (ii) defendant's knowledge thereof; (iii) intentional interference by defendant inducing or causing some third party to breach or terminate the relationship or expectancy; and (iv) resultant damage. *Browning*, 292 F.3d at 242; *accord Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993). Technomedia, however, has pleaded no facts showing that API intentionally induced or caused any third party to breach or terminate its relationship with Technomedia. *See Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. 1995) (emphasizing importance of intent element). Accordingly, the intentional interference claim must be dismissed. *See. e.g., Command Consulting Group,*

23 For the reasons stated in section II.A above, the District's statute of limitations applies, regardless of whether Technomedia's disparagement claim is governed by D.C. or Texas substantive law.

*LLC v. NeuralIQ, Inc.*, No. 09-0219, 2009 U.S. Dist. LEXIS 48082, at *8-12 (D.D.C. June 9, 2009) (dismissal of vague and conclusory intentional interference claim mandated by *Twombly*).

Even if Technomedia's claim could somehow pass muster under the *Twombly* standard, an intentional interference claim cannot be founded on API's alleged breach of the contract with Technomedia that lies at the heart of this breach-of-contract case. There can be no tortious interference as a matter of law where "the interference is caused by the defendant's breach of his own contract with plaintiff." *Business Equipment Ctr. Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978); *accord King & King Chartered v. Harbert Int'l, Inc.*, 503 F.3d 153, 157 (D.C. Cir. 2007); *Government Relations Inc. v. Howe*, No. 05-1081, 2007 U.S. Dist. LEXIS 4952, at *29-30 (D.D.C. Jan. 24, 2007); *Oblio Telecom, Inc. v. Patel*, No. 08-0279, 2009 U.S. Dist. LEXIS 49224, at *18 (N.D. Tex. June 10, 2009); *see also Shenandoah Assocs. Ltd. v. Tirana*, 322 F. Supp. 2d 6, 10 (D.D.C. 2004). If a party believes that a defendant's alleged wrongful contract termination impaired third-party relationships, its claim is properly for breach of contract — not for tortious interference. *See, e.g., In re Beitzell*, 163 B.R. 637, 656 (Bankr. D.D.C. 1993).

Finally, Technomedia's assertion that the alleged communication by API's counsel to the Carrollton, Texas Police Department in March 2008 constitutes tortious interference (Am. Countercl. ¶ 62) also fails. Technomedia alleges no facts showing that this communication caused any third party to breach or terminate its relationship with Technomedia — much less that API intended for such communication to do so. Moreover, the claim is closely intertwined with Technomedia's defamation claim and is thus barred by the District's one-year statute of limitations for defamation. *See Browning*, 292 F.3d at 244 (applying one-year

defamation statute of limitations to tortious interference claim that was closely intertwined with claim of defamation).

**D. Technomedia's Misappropriation of Trade Secrets Claim Should Be Dismissed (First Cause of Action).**

For its First Cause of Action, Technomedia alleges that it provided trade secrets to API pursuant to the Nondisclosure Agreement and that API misappropriated those trade secrets by disclosing them to TWL and its principals, Cagan and Quinn, and to unidentified third parties. Am. Countercl. ¶ 39. This claim also fails as a matter of law for several independent reasons.

First, the claim fails because the Amended Counterclaim concedes that TWL was authorized to receive Technomedia trade secrets — and, indeed, that Technomedia itself provided such trade secrets to TWL. Am. Countercl. ¶ 19. The Amended Counterclaim also alleges that Technomedia partnered with TWL to create Skill Ventures for the specific purpose of furthering Technomedia's allegedly confidential business concepts. *Id.* ¶ 17. No claim for misappropriation of trade secrets lies where the plaintiff implicitly or explicitly authorized the disclosure to which it objects. D.C. Code § 36-401(2)(B); *see also Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004) (unauthorized use is essential element of trade-secret misappropriation claim under D.C. law); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 79 (D.D.C. 2007) (same); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003) (same under Texas law). Because Technomedia concedes that it authorized and effected a disclosure of its trade secrets to TWL here, its claim that API misappropriated Technomedia trade secrets by allegedly disclosing them to TWL, Cagan and Quinn fails as a matter of law.[24]

---

[24] Technomedia's vague averment that the secrets it shared with TWL are "not *necessarily* the same" as those it shared with API (Am. Countercl. ¶ 19, emphasis added) is insufficient to stave off

Moreover, Technomedia's unsubstantiated allegation that API disclosed alleged trade secrets to unidentified third parties (Am. Countercl. ¶ 39) is precisely the kind of conclusory "formulaic recitation" of an element of a cause of action that cannot survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. *See, e.g. All Bus. Solutions, Inc. v. NationsLine, Inc.*, No. 09-00013, 2009 U.S. Dist. LEXIS 54693, at *12 (W.D. Va. June 29, 2009) (dismissing misappropriation of trade secrets claim pursuant to *Twombly* and *Iqbal* where claim was based on mere conclusory assertion that defendant "sought . . . to appropriate and disclose the names of ABS customers, along with other ABS trade secrets and confidential information"); *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (dismissing trade secrets claim pursuant to *Twombly* where complaint failed, *inter alia*, to identify how trade secrets were wrongfully used).

Finally, Technomedia's assertion that API improperly acquired its trade secrets through fraud (Am. Countercl. ¶¶ 40(b), 46) misses the mark. Where an alleged misappropriation of trade secrets is premised on fraud, the plaintiff must plead such fraud with the particularity mandated by Fed. R. Civ. P. 9(b). *See, e.g., Government Relations Inc. v. Howe*, 2007 U.S. Dist. LEXIS 4952, at *43-45 (applying Rule 9(b) to dismiss claim that defendant improperly acquired trade secrets and confidential information through fraud); *accord TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 545-46 (M.D.N.C. 2008); *Foam Supplies, Inc. v. Dow Chem. Co.*, No. 05-1772, 2006 U.S. Dist. LEXIS 53497, at *42-43 (E.D. Mo. Aug. 2, 2006). As shown below, Technomedia has not come close to satisfying the Rule 9(b) standard.

---

dismissal. Technomedia knows or should know whether the alleged secrets it allegedly shared with API were different from those it shared with TWL.

### E. <u>Technomedia's Fraud Claim Should Be Dismissed (Second Cause of Action).</u>

The Amended Counterclaim alleges that Technomedia was fraudulently induced to enter into the Nondisclosure Agreement in August 2004 because API never intended to abide by the confidentiality provisions of that contract. Am. Countercl. ¶¶ 48-53. Pursuant to Fed. R. Civ. P. 9(b), such a claim must be pleaded with particularity: it must allege "the time, place and content of the false misrepresentations; the misrepresented fact; and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 34 (D.D.C. 2007). The Amended Counterclaim utterly fails that test.

In order to make out a claim of fraudulent inducement, a plaintiff must allege facts demonstrating that, "at the time of [the promise's] making the promisor had no intention of carrying it out." *See Day v. Avery*, 548 F.2d 1018, 1026 n.39 (D.C. Cir. 1976); *see also, e.g.*, *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (holding that plaintiff alleging promissory fraud must "point to facts which show that defendant harbored an intention not to be bound by terms of the contract *at formation*") (emphasis added); *Champion Titanium Horseshoe, Inc. v. Wyman-Gordon Inv. Castings, Inc.*, 925 F. Supp. 188, 190 (S.D.N.Y. 1996) (same). "Bare allegations that the defendant had no intention of carrying out promises or contractual terms at the time of formation are insufficient to satisfy the particularity requirements of Rule 9(b)." *Premiere Innovations, Inc. v. IWAS Indus., LLC*, No. 07-1083, 2007 U.S. Dist. LEXIS 72755, at *5-6 (S.D. Cal. Sept. 28, 2007).

While the Amended Counterclaim summarily avers that API never intended to perform its obligations under the Nondisclosure Agreement (Am. Countercl. ¶ 49), no specific facts are alleged that could support such an inference. Technomedia's allegation that API advised it not to consult a lawyer in connection with the Nondisclosure Agreement (*id.* ¶¶ 14(d),

50), even if true, in no way suggests that API did not intend to perform its obligations at the time the contract was formed. Nor does Technomedia's allegation that API made "oral assurances and promises" during the drafting of the Nondisclosure Agreement (*id*. ¶ 50) suggest an intent not to perform in August 2004.[25] In short, the Amended Counterclaim includes only "naked assertions," but no specific facts from which the Court could conclude that Technomedia "is entitled to relief" for fraud. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557.

Technomedia's claim that API breached the Nondisclosure Agreement also does not furnish an adequate factual basis for any recovery. The unspecified breach is alleged to have occurred at some point after Skill Ventures was formed in January 2007 — more than two years after the Nondisclosure Agreement was executed. Am. Countercl. ¶¶ 20-22. Where a plaintiff alleges fraud based on defendant's intent not to perform contractual duties, it is not sufficient simply to plead a subsequent breach of the agreement, as Technomedia has done here. *See, e.g., Wagshal v. Rigler*, 947 F. Supp. 10, 14 (D.D.C. 1996); *Shields v. Washington Bancorp.*, No. 90-1101, 1992 U.S. Dist. LEXIS 4177, at *13 (D.D.C. Apr. 7, 1992); *Urban Invs., Inc. v. Branham*, 464 A.2d 93, 98 (D.C. 1983); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, No. H-08-1601, 2009 U.S. Dist. LEXIS 27634, at *10-11 (S.D. Tex. Mar. 31, 2009); *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 494-95 (D. Md. 2002).

Because the Amended Counterclaim sets forth no particularized facts indicating that API lacked an intent in August 2004 to perform its obligations under the Nondisclosure Agreement, Technomedia's fraud claim must be dismissed. *See, e.g., Cole v. Powell*, 605 F.

---

[25] API's (correct) claim that the Nondisclosure Agreement was superseded by the March 2005 API-Technomedia Agreement pursuant to the express terms of paragraph 42 of that contract (*see* Am. Countercl. ¶ 49) also does not, of course, evidence a lack of intent by API to perform under the Nondisclosure Agreement at the time that contract was executed in August 2004.

Supp. 2d 20, 25 n.2 (D.D.C. 2009) (dismissing fraud claim resting on conclusory allegations); *Kwang Dong Pharmaceutical*, 205 F. Supp. 2d at 495 (dismissing fraud counterclaims because plaintiff's allegations "do not contain anything more than his assertion that [defendant] had no intention of honoring the contracts at the time they were entered").

**F. Technomedia's Breach of Fiduciary Duty Claim Should Be Dismissed (Sixth Cause of Action).**

Technomedia's sixth and final cause of action similarly states in characteristically conclusory fashion that API owed it fiduciary duties and breached those duties. Am. Countercl. ¶¶ 85-87. This breach of fiduciary duty claim misses wide of the mark because the facts alleged in the Amended Counterclaim establish nothing beyond an arms-length contractual relationship between the parties. "[T]he mere existence of a contractual relationship is ordinarily insufficient to give rise to a fiduciary duty." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 36 (D.D.C. 2000); *accord Geiger v. Crestar Bank*, 778 A.2d 1085, 1095 (D.C. 2001) (refusing to recognize existence of fiduciary duty where no facts existed to support a conclusion that the parties had extended their relationship beyond provisions of contract); *Crim Truck*, 823 S.W.2d at 594-95 (no fiduciary duty between parties to franchise agreement because relationship was purely contractual); *see also Regency Commuc'ns v. Cleartel Commuc'ns*, 160 F. Supp. 2d 36, 42 (D.D.C. 2001) ("[t]he contracts were negotiated and entered into at arms length, and as such, no fiduciary relationship arises").

In a futile effort to circumvent this well-established law, Technomedia newly alleges in the Amended Counterclaim that the API-Technomedia Agreement created a "joint venture partnership" giving rise to fiduciary duties (Am. Countercl. ¶ 86). However, that notion is squarely contradicted the contract itself, which expressly states that Technomedia is "acting as an independent contractor and that no association, partnership or joint venture of any kind has

been created." *Id.* ¶ 30 (emphasis added). These words are clear and unambiguous and may not be contradicted by extrinsic evidence. *See, e.g., Geiger*, 778 A.2d at 1095 (rejecting fiduciary duty claim because "the account agreement was unambiguous and established a contractual relationship" between the parties); *Vulcan Arbor Hill Corp. v. Reich*, 81 F.3d 1110, 1117 (D.C. Cir. 1996) ("Where the language of a contract is wholly unambiguous, we will not consider extrinsic evidence of the parties' intent"); *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983) (same); *Montalvo v. Bekins Moving Solutions, Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. 2009) ("Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity").

Technomedia's self-serving assertion of trust and confidence in API similarly imposes no fiduciary obligations on API. "Subjective trust is simply not sufficient to transform an arms-length transaction into a fiduciary relationship." *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Co.*, 217 S.W.3d 653, 669 (Tex. Ct. App. 2007); *accord Muir v. Navy Fed. Credit Union*, No. 03-1193, 2005 U.S. Dist. LEXIS 3559, at *5-6 (D.D.C. Mar. 1, 2005) (rejecting depositor's breach of fiduciary duty claim against financial institution because "a trust relationship is not created by the [parties'] arms-length transaction"), *aff'd in relevant part*, 529 F.3d 1100, 1107-08 (D.C. Cir. 2008); *Crim Truck*, 823 S.W.2d at 595. Rather, the defendant must have a duty to act or give advice for plaintiff's benefit. *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994); *see also Crim Truck*, 823 S.W.2d at 594. API had no duty to give advice to or act for the benefit of Technomedia.

Finally, Technomedia's suggestion that API owed fiduciary duties because the API-Technomedia Agreement was in place for several years also fails. "The fact that a business relationship has been…of extended duration is not by itself evidence of a confidential

relationship." *Four Bros.*, 217 S.W.3d at 669; *accord Crim Truck*, 823 S.W.2d at 595; *see also Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (fiduciary relationship arises only when "parties extended their relationship beyond the limits of the contractual obligations").

In sum, API and Technomedia were simply parties to an arm's-length contract, and Technomedia has alleged no facts evidencing that the relationship was anything other than purely contractual. Accordingly, the breach of fiduciary duty claim must be dismissed.

## Conclusion

For the foregoing reasons, the Court should grant API's motion to dismiss Technomedia's tort claims (Am. Counterclaim, Causes of Action 1-3 and 5-6). Because Technomedia has already had one opportunity to cure its pleading defects and has failed to do so, the dismissal should be with prejudice.

Respectfully submitted,

*/s/ Eric C. Bosset*

Eric C. Bosset
D.C. Bar No. 414283
Dennis B. Auerbach
D.C. Bar No. 418982
Bradley K. Ervin
D.C. Bar No. 982559
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
Phone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for American Petroleum Institute*

Dated: July 17, 2009

# Attachment 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**TECHNOMEDIA INTERNATIONAL, INC.**<br><br>**Defendant/Counterclaim Plaintiff.** | ) | **Civ. No. 1:09-cv-00529 (RJL)** |

**AMERICAN PETROLEUM INSTITUTE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO STRIKE**

The American Petroleum Institute ("API") and Technomedia International, Inc. ("Technomedia" or "TMI") are parties in a breach of contract action. On June 24, 2009, API moved to strike the false, scandalous, and irrelevant passages in Technomedia's Counterclaim alleging API had supported or enabled the Islamic Republic of Iran, a designated terrorist sponsor, in violation of U.S. trade sanctions. Because Technomedia's Amended Counterclaim, filed on July 6, 2009, repeats those spurious and inflammatory accusations, API has renewed its motion to strike based on the same arguments previously advanced.[1]

TMI's Amended Counterclaim again accuses API of assenting to a third party's dissemination of technical industry information to Ecoman, a company based in Abu Dhabi. *See* Am. Counterclaim ¶ 31-32. TMI again alleges that API "knew or should have known" this information would be used to "train parties from the Islamic Republic of Iran." *Id.*, p.2. TMI's

[1] Because Technomedia's amendment fails to cure the plain deficiencies in its prior allegations, API's renewed motion largely reiterates the legal points presented in its prior motion to strike.

allegations of API's support of terrorists in Iran are utterly false, inflammatory to the highest degree, and severely injurious to the reputation that API has forged over nearly a century. API has had no dealings with the Islamic Republic of Iran, nor would it tolerate activities that violate U.S. trade sanctions. In its second attempt at pleading its Counterclaim, TMI still pleads no supporting facts – relying instead upon bare assertions and unjustified inferences – because it has no facts to plead. The Amended Counterclaim fails as well to furnish any understandable link between these scandalous allegations and TMI's claims, which API is separately moving to dismiss for failure to state a claim. Because TMI has again slung this mud, notwithstanding API's first motion to strike, the Court should strike all references in the Amended Counterclaim relating to an alleged connection between API and Ecoman, or between API and the Islamic Republic of Iran.

## STATEMENT OF FACTS

### A. Background

API is a nonprofit trade association that represents companies and individuals in the oil and natural gas industry. API is a well-respected organization, recognized both domestically and abroad for its broad range of research, education, and certification programs. Technomedia is a business engaged in the development of computer-based training products for members of the oil and gas industry.

On March 17, 2005, API and TMI entered into a contract for the development, sale, and distribution of computer-based programs for use by oil and gas industry workers. *See* Compl. ¶ 2. Under the contract, API granted to TMI a limited, non-transferable license to use certain API trademarks, including the mark "API University," in the promotion of specified e-learning

content. *See* Compl. Exh. A, Contract, ¶ 11.[2] In exchange, TMI agreed to, *inter alia*, "develop, market, sell, and distribute" e-learning content, "remit royalties" to API, and "take commercially reasonable efforts to promote" the training content covered by the contract. *See id.* ¶¶ 1, 6-7.

In November 2006, Technomedia executed a joint venture agreement with TWL Knowledge Group, Inc. ("TWL") to assist Technomedia in the promotion and sale of e-learning content. *See* Compl. ¶¶ 19-20; *see also* Answer ¶¶ 11-12; Orig. Counterclaim ¶ 12. By late 2007, the business relationship between TMI and TWL began to deteriorate, precipitating a series of failures by TMI to meet its contractual obligations with API. *See, e.g.*, Compl. ¶¶ 41, 45, 50; Answer ¶ 14. On January 12, 2009, in response to Technomedia's repeated and material breaches, API exercised its right to terminate the agreement. *See* Compl. ¶ 50.

On March 19, 2009, API filed the instant action seeking, *inter alia*, a judicial determination that API properly exercised its authority in terminating the API-Technomedia Agreement, and that API has no further obligations under the contract. *See* Compl. ¶ 60.

**B. TMI's Scandalous Allegations**

On July 6, 2009, Technomedia filed its Amended Counterclaim, in which TMI repeatedly accuses API of illegally participating in (or assenting to) dissemination of technical industry

---

[2] The API-Technomedia Agreement is also attached to TMI's Original Answer and Counterclaim ("Orig. Counterclaim") as Exhibit 1. In ruling on this Motion to Strike, the Court may take judicial notice of documents attached to the pleadings as exhibits. *Cf. Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (In deciding a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.").

knowledge to Iran, a state sponsor of terrorism.[3] Technomedia's amended pleading includes the following scandalous and spurious allegations:

- <u>Paragraph 30</u>:
  - Dennis Cagan, the chief executive officer of TWL, "entered into a business arrangement" with Ecoman, a corporation "involved [in] significant activities in Iran, a state America holds to be a sponsor of international terrorism."
  - The terms of this agreement involved the provision of "API-University eLearning course content and TechnoMedia materials."
  - TMI was "extremely alarmed by this information because, among other things, the eLearning content directly pertains to the fossil fuel energy industries; the knowledge and skill sets for this industry have components that are readily transferable to the nuclear industry."
- <u>Paragraph 31</u>:
  - TMI informed a senior manager at API of this alleged use "of API-University eLearning course content," but API was "unconcerned about" the availability of the e-learning content in Iran.[4]
  - API reviewed the Ecoman website, "which clearly showed an Iranian officer."
  - API "knew or should have [known] that Ecoman was providing the content to Iran."[5]

---

[3] The Amended Counterclaim asserts various contract and tort claims based on the API-Technomedia Agreement. As demonstrated in a separate memorandum of points and authorities, TMI's tort claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

[4] Nowhere does the Amended Counterclaim allege that TMI ever informed API that Mr. Cagan was supposedly distributing "API University e-learning course content and TechnoMedia materials" to Iran – because TMI brought no such matter to API's attention.

- Paragraph 32:
  - Ecoman continued to "advertise[]" API-University content on its website, constituting "false advertising" that "API refused . . . to prevent."
  - API's alleged conduct "expos[es] TechnoMedia to legal liability."
- Paragraph 33:
  - Although the Ecoman website no longer "refer[s] to API," the e-learning courses are still mentioned by name.
  - "API . . . did not cause the Ecoman site to stop this false advertising."
- Paragraph 34: API's decision to terminate its agreement with TMI was "at least partly the result" of TMI's "expression of concern about API's disregard for the distribution of sensitive course content and materials through . . . Ecoman . . . [with resulting] availability . . . within the Islamic Republic of Iran."
- Paragraph 35: The courses listed on the Ecoman website "are particularly shocking and outrageous if they are actually provided to persons working in or on behalf of a state like Iran," including information pertaining to "[b]loodborne [p]athogens," and "[c]hemical [h]ealth [h]azards."
- Paragraph 77: API breached its contract with TMI and violated the duty of good faith and fair dealing by "refus[ing] to cooperate with TechnoMedia in asserting the parties' rights *vis-à-vis* third parties like Ecoman."

---

[5] Under the express terms of the API-Technomedia Agreement, TMI was "solely responsible" for ensuring that the provision of API University courses complied with all U.S. trade laws. *See* Compl. Exh. A, ¶ 37.

- Paragraph 80: API breached its contract with TMI and violated the duty of good faith and fair dealing by "violat[ing] U.S. Foreign Asset Control laws and regulations by allowing the API and API-University names to be used by parties doing business in the country of Iran for the benefit of the petroleum and natural gas industries in that terrorist state."
- Paragraph 87: API breached "its fiduciary duty to TechnoMedia" by "allowing Ecoman to use TechnoMedia's materials."

TMI alleges, in sum, that API "persist[s] in the continued improper and illegal use and dissemination of Technomedia's proprietary e-learning materials" in "apparent contempt of its *American* roots." Am. Counterclaim, p. 1. TMI also alleges that API's decision to terminate its contract with TMI was "at least in part" motivated by TMI's "expression of concern about API's participation in the distribution of sensitive course content and materials through Abu Dhabi-based companies like Ecoman and Naizak, even though API's senior personnel knew this content likely would be used to train parties from the Islamic Republic of Iran." *See id.*, p. 2.

Technomedia pleads no facts, only vague and conclusory statements, to buttress the damaging and defamatory allegations it has leveled against API. Furthermore, even if TMI had provided the slightest factual foundation for API's alleged link to Ecoman and Iran, the issue is immaterial to the present action. These allegations do not support TMI's Amended Counterclaim, and the API-Technomedia Agreement clearly assigns to TMI all legal compliance responsibilities relating to the dissemination of e-learning content. *See supra* note 5. API therefore moves to strike all allegations of an association between API and Ecoman, or between API and Iran, set forth in the Amended Counterclaim Summary, pp. 1–2 , and paragraphs 30, 31, 32, 33, 34, 35, 77, 80 and 87.

## ARGUMENT

Under the Federal Rules of Civil Procedure, the Court has the power to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Judicial Watch, Inc. v. U.S. Dep't of Comm.*, 224 F.R.D. 261, 263 (D.D.C. 2004) ("Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike a pleading, or portions thereof, for insufficiency, redundancy, immateriality, impertinence or scandalousness."). The Court retains "liberal discretion to strike such filings as it deems appropriate under Rule 12(f)." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (internal quotation omitted). Indeed, "[t]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Aftergood v. CIA*, 355 F. Supp. 2d 557, 564 (D.D.C. 2005).

### A. TMI's Accusations Should be Stricken as Scandalous and Unfounded.

An allegation is "scandalous" if it "improperly casts a derogatory light" on a party to the action. Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1382; *see also Judicial Watch*, 224 F.R.D. at 263 ("[A] matter is 'scandalous where it conveys a cruelly derogatory light on a party or other person." (internal quotation omitted)); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) ("[A]llegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones."). To qualify as "strike-worthy," a scandalous allegation must not only offend, but also "be found lacking in evidentiary support." *Cobell v. Norton*, 224 F.R.D. 266, 282 (D.D.C. 2004); *see also Weiss v. LaSuisse, Societe D'Assurances sur La Vie*, 131 F. Supp. 2d 446, 450 (S.D.N.Y. 2001) (Court will strike a pleading "when it appears beyond peradventure that it is a sham and false and that its allegations are devoid of factual basis" (citations omitted)).

**1. TMI's accusations cast a cruelly derogatory light on API**

API does not do business with or in the Islamic Republic of Iran. API was established in 1919, and has developed into one of the nation's largest national trade associations. API is recognized worldwide for its excellence as a source of industry data and educational resources. The allegation that API "participat[ed] in the distribution of sensitive . . . materials," which are "readily transferable to the nuclear industry," to "a state . . . sponsor of terrorism," *see* Am. Counterclaim, p. 2, ¶ 30, is considerably damaging to the reputation that API has built over the course of nearly a century. TMI's accusations move even further beyond the pale, however, going so far as to suggest that API "permitted" the continued distribution of this information, *see id.* ¶ 32, and that API "knew or should have know[n] that Ecoman was providing the content to Iran," *see id.* ¶ 31, "for the benefit of the petroleum and natural gas industries in that terrorist state." *See id.* ¶ 80.

Technomedia's statements accuse API of no less than offering support to potential terrorists operating within Iran and "the nuclear industry" in that country. *See* Am. Counterclaim, p. 2, ¶¶ 30-31. TMI could hardly have conjured up a charge more damaging to API's reputation. Within recent years, terrorist attacks on American soil and abroad have taken thousands of innocent lives, and the Department of State has declared that Iran, in particular, "exports its fundamentalist revolution to other countries," "supports terrorist organizations," and holds "vehement anti-U.S. and anti-Israel stances." United States Department of State, Bureau of Public Affairs: Electronic Information and Publications Office, *Background Note: Iran* (March 2008), *available at* http://www.state.gov/r/pa/ei/bgn/5314.htm. TMI's irresponsible accusations tying API to such a notorious regime are at least as derogatory as allegations that other courts have struck down as scandalous. *See Pigford*, 215 F.R.D. at 4 ("[C]harges of racism

are plainly scandalous within the meaning of [Rule 12(f)]. . . .”); *Johnson v. County of Macomb*, No. 08-10108, 2008 WL 2064968, *2 (E.D. Mich. May 13, 2008) (striking as scandalous allegations of county official’s “ties to organized crime”); *Rogers v. Mount Union*, 816 F. Supp. 308, 318 (M.D. Pa. 1993) (striking plaintiff’s accusations linking defendants to the Ku Klux Klan).

**2. TMI’s accusations are wholly lacking in factual support**

TMI has alleged no factual basis whatsoever for the wholly conclusory charges of illegality leveled against API. TMI’s pleading provides no direct link between API and Iran, provides no insight into how, when, or why a link between API and Iran (or Ecoman) was forged, nor does it cast even the faintest light on who from API was involved and in what way. Moreover, Technomedia alleges nothing to suggest that API had any more knowledge or role in this alleged distribution than TMI itself. TMI asserts, for example, that Dennis Cagan entered into an arrangement with Ecoman to provide API and Technomedia e-learning materials, and alleges further that “this business enterprise involved significant activities in Iran,” a matter that TMI “brought . . . to the attention of [an] API senior manager.” *See* Am. Counterclaim ¶ 30. Even if true, this assertion would do nothing more than suggest that API knew what TMI itself knew.[6]

Similarly, the allegations raise no connection between API and Iranian terrorists. TMI cites the appearance upon Ecoman’s website of API’s trademark[7], *see* Am. Counterclaim ¶ 31, and leaps to the spectacular inference that API has sponsored, directly or by acquiescence, the

[6] If TMI knew that any courses covered under the API-Technomedia Agreement were being distributed in violation of the law, TMI was contractually obligated to prevent such unlawful distribution. *See supra* note 5.

[7] API has demanded that Ecoman cease and desist its unlawful infringement of API’s marks.

distribution of e-learning materials in Iran. *See id.* ¶¶ 31–32 & p. 2 (alleging "API's participation in the distribution of sensitive . . . materials"). How is this inference possibly warranted? That Ecoman advertised its programming as compliant with API standards, and illegally used API's mark in doing so, does not suggest that API has had any role in the licensing or sponsorship of Ecoman's products, and certainly does not warrant the serious allegations that API "knew or should have known," *id.* ¶ 31, that materials carrying the API brand, which are "readily transferable to the nuclear industry," were likely being distributed to "a state . . . sponsor of international terrorism," *see id.* ¶ 30, or that API "permitted" this enterprise. *See id.* ¶ 32. TMI further undercuts its unsupported chain of speculation linking API to Iran by listing courses that would be advantageous to terrorists "*if* they are actually provided to persons working in or on behalf of a state like Iran." *Id.* ¶ 35 (emphasis added).

Technomedia's accusations are precisely the sort of unsupported scandalous statements that courts have stricken under Rule 12(f). *See, e.g., Pigford*, 215 F.R.D. at 4 (striking accusations of racism as scandalous and "unsupported by facts or evidence"); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (striking scandalous paragraphs implying that defendants intentionally caused salmonella outbreak where plaintiffs' theory was based on rumor and evidence that such sabotage was hypothetically possible); *Nault's Auto. Sales, Inc. v. Amer. Honda Motor Co.*, 148 F.R.D. 25, 31 (D.N.H. 1993) (striking scandalous allegations of contempt and discovery abuses where allegations were based "not on hard evidence of wrongdoing, but upon suspicion supported only by a rather strained theory . . . ."). TMI's impertinent allegations here are without a shred of truth or support, and should likewise be stricken.

**B. TMI's Accusations Should Be Stricken as Immaterial.**

TMI has offered an insufficient factual basis to support its accusations against API, and, as such, this Court need not reach the question of whether the allegations are relevant to the present action. *See Cobell*, 224 F.R.D. at 285. However, even if this Court finds that Technomedia has provided a sufficient foundation for its allegations, the allegations must nonetheless be stricken as immaterial.

"A matter is immaterial or impertinent when it is not relevant to the resolution of the issue at hand." *Judicial Watch*, 224 F.R.D. at 263; *see also Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457, 458 (D.D.C. 1994) (striking allegations as "simply irrelevant" and "prejudicial"). TMI's pleading does not establish any essential relationship between the allegations regarding Ecoman, Iran, and terrorists and TMI's counterclaims. Notably, TMI makes only three specific references to these allegations in strained support of its asserted causes of action. *See* Am. Counterclaim ¶¶ 77, 80, 87. If Technomedia means to suggest that alleged activities between API and Ecoman breached API's contract with TMI, these arguments fail. As the API-Technomedia Agreement specifically states, TMI is solely responsible for the sale and distribution of all courses and e-learning resources contemplated by the contract. *See* Compl. Exh. A., Contract ¶¶ 1-2.

Furthermore, the contract states that TMI "shall be solely responsible for ensuring that the Products . . . and Customized Courses and other Services comply with *any and all* statutory and regulatory requirements imposed by *any* governmental authority including . . . with the U.S. Export Administration . . . relating to the export controls . . . ." *See* Compl. Exh. A., Contract ¶ 37 (emphasis added). Therefore, even assuming the truth of TMI's allegations, the responsibility for maintaining compliance with "U.S. Foreign Asset Control laws and regulations," *see* Am.

Counterclaim ¶ 80, lay entirely with TMI. API had no such obligation and consequently did not breach the contract.

To the extent Technomedia contends that API breached an alleged fiduciary duty in "allowing" materials to be offered through Ecoman, *see* Am. Counterclaim ¶ 87, again, the responsibility for maintaining compliance with "U.S. Foreign Asset Control laws and regulations" and controlling the distribution of e-learning materials lay entirely with TMI. *See* Compl. Exh. A., Contract ¶ 37. There is thus no basis to allege that API breached a duty to Technomedia. Moreover, as further detailed in API's renewed motion to dismiss, under the API-Technomedia Agreement, TMI acted solely "as an independent contractor and . . . no association . . . [was] created" that would be capable of rendering API a fiduciary of TMI. *See id*. ¶ 30.

## CONCLUSION

For the foregoing reasons, TMI's allegations of an association between API and Ecoman, and between API and the Islamic Republic of Iran, set forth in the Summary, pages 1-2, and paragraphs 30, 31, 32, 33, 34, 35, 77, 80 and 87 of the Amended Counterclaim, should be stricken pursuant to Fed. R. Civ. P. 12(f).

Respectfully submitted,

*/s/ Eric C. Bosset*_______

Eric C. Bosset
D.C. Bar No. 414283
Dennis B. Auerbach
D.C. Bar No. 418982
Bradley K. Ervin
D.C. Bar. No. 982559
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Phone: (202) 662-6000
Fax: (202) 662-6291

*Attorneys for American Petroleum Institute*

Dated: July 17, 2009