**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE** | ) | |
| **v.** | ) | **Civil Action No. 1:09-cv-00529-RJL** |
| **TECHNOMEDIA INTERNATIONAL, INC.** | ) | **[Oral Argument Requested]** |

**TECHNOMEDIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO API'S MOTION TO DISMISS COUNTS 1-3 AND 5-6 OF TECHNOMEDIA'S AMENDED COUNTERCLAIM**

TechnoMedia's pleadings are more than sufficient. What API derisively mocks as a "grab bag of torts" are legitimate claims for misconduct that include defamation, intentional interference with economic advantage, mis-appropriation of trade secrets, fraudulent inducement, and breach of fiduciary duty. Many of the misdeeds of API plainly go well beyond mere breach of contract; they characterize this seemingly venerable institution that is an out-of-control, abusive behemoth. API would like this court to toss this extremely serious counterclaim by casting it in degrading language.

API's motion portends an inevitable war-of-attrition strategy. API haphazardly includes grandiose statements of law in its motion to dismiss without regard to the facts in this case and application of the law to the facts in this case. With nothing more than a cursory review of the cases relied upon by API, it is clear that the law supports TechnoMedia's causes of actions. The volume of API's motions and filings are indicative of heavy-handed "litigation" practice of a mega law firm representing a huge and powerful lobbying group. They are without substance. API is not asking this court to grant it a motion to dismiss based upon the pleadings. Rather, API is asking this court to grant it a motion to dismiss because TechnoMedia allegedly must but has failed to prove its entire case at the initial pleading stage. As explained below, TechnoMedia has sufficiently pled its case to put API on notice as required by the Federal Rules of Civil Procedure.

In yet another litigation tactic to suppress API's wrongful acts, API has refused to engage in preliminary discovery or to exchange initial disclosures.[1] This is classic "Rambo Litigation" if it is anything. In the single deposition it has permitted, API's counsel committed what can only be described as serial obstruction, consisting of repeated and lengthy "speaking" or "coaching" objections, repeated demands to TechnoMedia's counsel to explain the relevancy of his questions, and instructions not to answer questions deemed "outside the scope" of the lady's deposition.

## I. BACKGROUND

TechnoMedia is a twelve employee company in Houston, Texas. It provides a fascinating catalogue of eLearning (computer-based) courses to the panoply of the oil and natural gas industry. These incredibly "user-friendly" courses serve a vital need of providing basic and advanced training to hundreds of thousands of unskilled workers, both literate and barely so, in a multi-language format that is unique and proprietary.

API is the well-known, non-profit special-interest pressure group which purports to be the public face of America's energy industries. When its senior personnel discovered TechnoMedia, they wasted no time in seizing the opportunity to lock up it and its technology in a pair of contracts which are relatively one sided in API's favor.

First there was the API-prepared Nondisclosure Agreement ("Confidentiality Agreement") by which API acquired trade secrets from TechnoMedia.

Next, the parties signed the API-drafted contract[2] ("Contract") which laid the foundation for their business venture in eLearning.

---

[1] API begrudgingly allowed a limited deposition of Whitney Schechter on July 23, 2009. However, API's counsel issued numerous instructions that Ms. Schechter not answer questions. Indeed, approximately 60 out of the 367 pages of the deposition transcript rough draft consist of API's counsel's unilateral objections that questions were "beyond the scope" of the deposition.

[2] "Agreement to Develop and Market API-Branded Products and Services in Electronic Media Formats" dated March 17, 2005. (attached as Exhibit 1 to the Amended Counter-Claim). This agreement followed the Nondisclosure Agreement signed on August 25, 2004 by 7 months.

API's Kathleen Combs specifically represented to TechnoMedia's Greg Bihn that the Contract would not terminate the Confidentiality Agreement and that the Confidentiality Agreement would remain in full force and effect. Combs told Bihn to not get an attorney involved but to trust API. Bihn complied.

Under the Contract, TechnoMedia would utilize its[3] CD-ROM and online internet training courses and eLearning resources and tools for petroleum industry workers in order to sell, distribute, and market these courses and eLearning resources and tools as API courses and eLearning resources and tools. Pursuant to the Contract, TechnoMedia was not only branding its own online courses with the API Brand, but also branded online course from Primedia (subsequently, TWL Knowledge Group[4] ("TWL") through a licensing agreement between TWL and TechnoMedia.

The 2005 contract envisioned branding TechnoMedia's oil-specific courses as API-University, as well as other mundane, albeit valuable "industrial" courses to augment its eLearning catalogue from TWL. The Contract allowed for the marketing of both sets of courses under the API banner. To accomplish this, it also required API to open the door to TechnoMedia of API's constituencies for the eLearning products of TechnoMedia. The latter was to never occur in any meaningful way.

API specifically agreed to not enter into similar agreements with others (*i.e.*, to provide the eLearning products as described in the Contract). (Contract ¶ 26) In Paragraph 27 of the Contract, API obligated itself to give TechnoMedia "the right of first refusal" to provide the Customized Courses and Other Services (as defined in the Contract) on behalf of API during the term of the Contract. Further, API agreed that TechnoMedia "shall have the right of first refusal" to develop and distribute API Products at API's request. *Id*. Moreover, API expressly agreed that "[i]n no event… shall API develop and distribute a Product via internet or CD-ROM that directly competes with or duplicates established products as covered by this [Contract]." *Id*.

TechnoMedia took responsibility for ensuring that the products, and products and customized courses and other services, complied with all statutory and regulatory requirements imposed by any

[3] and similar interactive and online courses licensed to TechnoMedia by a company then called Primedia.
[4] TWL filed bankruptcy in October 2008.

governmental agency. This would include agencies like the United States Office of Foreign Asset Control and statutes like the Foreign Corrupt Practices Act.

In order to expand its marketing for the TechnoMedia eLearning products, TechnoMedia formed a limited liability company with TWL (Skill Ventures, LLC, (the "LLC")). API was involved in guiding TechnoMedia in the formation of this LLC. Through this and related conduct, TechnoMedia and API had demonstrably formed a joint venture partnership *i.e.,* a business relationship for profit.

Within months of the formation of the LLC, in late 2007, the relationship between TechnoMedia and TWL came to a halt. API began maneuvering with TWL to terminate the Contract with TechnoMedia in order to replace it with TWL. Agents of TWL (Dennis Cagan and Patrick Quinn) began a whisper campaign of highly inflammatory and defamatory *per se* statements about TechnoMedia to API, and API was whispering right back to TWL. The defamation culminated in the outrageously false claim that the TechnoMedia—TWL joint venture offices were "searched" by the "financial crimes unit" of the local police due to "criminal complaints" involving Greg Bihn and TechnoMedia. These statements were published within and without of API and were republished in a June 2008 letter that (i) was sent by the assistant to the author of the letter; and (ii) was sent to the regular business fax at TechnoMedia's office in Houston, Texas. TechnoMedia was then required to self publish.

Previously, TechnoMedia and API's relationship had been untarnished; in August 2007, the parties' contract was agreed to be extended through 2011, prior to API republishing the defamatory statements.

Under both agreements with API, TechnoMedia disclosed various confidential information and trade secrets to API. These confidential information and trade secrets include business plans, business concepts, contacts, and know-how. Specifically, these trade secrets and confidential information included, but were not limited to, TechnoMedia's proprietary, confidential and secret business plans, strategic marketing plans and ideas, its product development ideas, the concept and idea of qualification centers, the names and outlines for additional oil and natural gas eLearning courses, e-transcript services, products and services, and other trade secrets (again, collectively referred to as "Confidential

Information"). TechnoMedia derives economic value from its Confidential Information. It has taken more than reasonable efforts to maintain its trade secret and confidential information's secrecy. This is amply evidenced by the very two agreements at issue here.

API has deliberately, intentionally, maliciously, and in bad faith made unauthorized uses and disclosures of TechnoMedia's Confidential Information resulting in loss and damages to TechnoMedia, which continue to this day. Indeed, as outlined in TechnoMedia's Amended Counterclaim, API continues to request proposals from former agents and competitors of TechnoMedia for the development of TechnoMedia's trade secrets.[5]

Regrettably, API unilaterally and wrongfully purported to terminate the Contract and the partnership in January 2009 without notice. Shockingly, API has still refused to return the Confidential Information even after repeated requests to do so by TechnoMedia.

In further show of bad faith and in breach of API's fiduciary duty to TechnoMedia, API allowed, intentionally or by acquiescence, for TechnoMedia's API-branded eLearning content to be advertised on the internet website of Ecoman, which allows business with Iran. Immediately, upon learning of this information, TechnoMedia informed a senior manager at API of the situation and nothing was done until the filing of this lawsuit to remove the advertisement.

## II. ARGUMENT

TechnoMedia has pled sufficient facts to support its claims for defamation, intentional interference with economic advantage, misappropriation of trade secrets, fraud and fiduciary duty.

### A. Standard of Review

API alleges that TechnoMedia's tort counterclaims must be dismissed because TechnoMedia has failed to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), however, a court will not grant the motion "unless i[t] appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

[5] As the background to API's multiple violations of its two agreements with TechnoMedia are discussed more fully in TechnoMedia's Amended Counterclaim, only a brief discussion is set forth herein.

which would entitle him to relief." *Marsh v. Hollander*, 339 F.Supp.2d 1, 5 (D.D.C. 2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court will assume that the facts alleged by Plaintiff are true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the Plaintiff. *Id*. In addition, any inferences that can be drawn from those facts will be done so in favor of Plaintiff, as the non-moving party. *Id*.

Therefore, if the factual allegations in TechnoMedia's Amended Counterclaim support any legal theory that entitles TechnoMedia to some relief, the court should overrule API's motion.

**B. Choice of Law**

Without providing an actual choice of law analysis, API makes a conclusory statement that all the tort claims should be governed by District of Columbia law. However, the only evidence in support of District of Columbia is that API is located there and drafted the agreement at issue to reflect that District of Columbia applied to the agreements. However, TechnoMedia is a Texas entity, several of the torts occurred in both the District of Columbia and Texas, and the injury occurred in Texas.

The District of Columbia follows the "governmental interests analysis" approach to choice of law. *Dist. of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995); see also *Rong Yao Zhou v. Jennifer Mall Rest., Inc.,* 534 A.2d 1268, 1269 (D.C. 1987). Under this approach, the court will "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *Coleman*, 677 A.2d at 816. Therefore, the court should consider the interests, respectively, of Texas and the District of Columbia. When evaluating the "governmental interests analysis" the court should consider the following four factors: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 4) the place where the relationship is centered. *Herbert v. Dist. of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (citing factors enumerated in the RESTATEMENT OF (SECOND) OF CONFLICT OF LAW

§145.) The court is not bound by a single jurisdiction to decide all issues presented in a case. *Coleman*, A.2d at 816. The court is to examine each issue and the jurisdictional interests involved. *Id.*

Using the four factors to evaluate the "governmental interests analysis," 1) TechnoMedia was injured in Texas; 2) the place where the conduct causing the injury occurred was in either in Texas or the District of Columbia, depending on the cause of action; 3) TechnoMedia's incorporation and principle place of business is in Texas; and 4) the relationship is centered in Texas through TechnoMedia.

Furthermore, when utilizing the "governmental interests analysis" approach in defamation actions, the "greatest interest lies where the victim's reputation suffered injury." *Dowd v. Calabrese*, 589 F.Supp. 1206, 1210 (D.D.C. 1984). In this case TechnoMedia is based in Texas, and the effects of API's defamatory smear campaign are similarly based in Texas. Therefore, the court should apply Texas law to the defamation and business disparagement issues because Texas is where TechnoMedia was injured.

### C. TechnoMedia has sufficiently pled its Defamation claim.[6]

In its original counterclaim, TechnoMedia sufficiently pled facts to support its defamation claim against API. TechnoMedia's amended counterclaim merely restates the original claim with greater particularity, and amplifies the details alleged in its original counterclaim. API would have this Court find that it is beyond a doubt that TechnoMedia can prove no set of facts to support its claim for defamation. API puts forth this unsupportable argument in spite of the fact that this Court will assume all the facts alleged by TechnoMedia are true, and construe any ambiguities or doubts concerning the sufficiency of the defamation claim in favor of TechnoMedia; and that any inferences that can be drawn from those facts will be done so in favor of TechnoMedia, as the non-moving party. API's motion can not and does not meet such a heavy burden; it should therefore be denied.

[6] Although, TechnoMedia presented current District of Columbia case law, which finds that in a defamation case, the state law to apply is the law of the state where the victim's reputation suffered injury, API failed to address the choice of law in this defamation cause of action, instead still relies on its omnibus statement that the District of Columbia law should apply. See *Dowd v. Calabrese*, 589 F.Supp. 1206, 1210 (D.C.Cir. 1984).

Under the law of the District of Columbia,[7] to state a cause of action for defamation, a party must allege and prove four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts,* 884 A.2d 63, 76 (D.C. 2005) (citing *Crowley v. North Am. Telecomms. Ass'n,* 691 A.2d 1169, 1173 n. 2 (D.C.1997)).[8]

Although defamation complaints must be stated with particularity, District of Columbia courts have ruled that heightened pleading standards do not apply in defamation actions. *Coates v. Law School Admission Council*, 2005 WL 3213960, 2 (D.C. Cir. 2005) (citing *Croixland Props. Ltd. P'Ship v. Corcoran*, 174 F.3d 213, 215 n. 2 (D.C. Cir. 1999) (citing Fed.R.Civ.P. 9)). In fact, not only is there no requirement for heightened fact pleading of specifics, the minimal requirement is "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While bare statements of legal conclusions are insufficient in a defamation claim, *Oparaugo,* 884 A.2d at 76-77 (noting earlier case where defamation claim dismissed where party failed to allege either the language or the substance of the defamatory statements), District of Columbia courts will only dismiss a claim, when construing the complaint in the light most favorable to the plaintiff, "it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (quoting *Crowley*) (other citations omitted) (reversing trial court decision granting motion to dismiss).

As shown below, the allegations put forth by TechnoMedia are clearly sufficient to permit API to respond, and thus satisfy the minimal requirement for notice pleading.

---

[7] Although TechnoMedia asserts that Texas law applies to the defamation cause of action, TechnoMedia has provided both District of Columbia law and Texas law (in the related footnote) to supports this response to the motion to dismiss.

[8] Texas law states: TEX. CIV. PRAC. & REM. CODE §73.001 (defining libel, element 3); *Bentley v. Buntan*, 94 S.W.3d 561, 579, 586, 590 (Tex.2002); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *Houseman v. Publicaciones Paso Del Norte, S.A De C.V.*, 242 S.W.3d 518, 523-24 (Tex.App.—El Paso, 2007).

1. ***TechnoMedia's defamation claim allegations are sufficient to put API on notice and to permit API to respond.***

API attempts to argue that TechnoMedia has not pled specific defamatory comments, by not pleading the "time, place, content, speaker and listener of the alleged defamatory matter." API, deliberately or otherwise, misinterprets and minimizes TechnoMedia's defamation cause of action because the allegations put forth are indeed sufficient to put API on fair notice and permit API to respond. API chooses to ignore the breadth of defamatory statements alleged, and attempts to turn a blind eye to them by choosing to focus only on two defamatory letters. TechnoMedia's counterclaim pleads defamation far in excess of two letters, and far in excess of a bare recitation of the elements of defamation.

TechnoMedia's Amended Counterclaim satisfies the requirement of alleging both the content and speaker of the defamatory matters.[9] Both the original and amended defamation claim allege that API published and republished allegations of dishonesty, financial misdealing, and other criminality and that it did so throughout the API organization and otherwise. See Original Counterclaim ("Orig. Countercl."), ¶17; Am. Countercl., ¶22. In the deposition of Whitney Schechter, taken on Thursday July 23, 2009, she confirmed that several people – including herself – were involved in drafting and re-drafting and commenting on the highly defamatory letter of June 5, 2008. Of course, by casting its motion as one to dismiss, API seeks to avoid or ignore this factual issue. TMI has alleged the above was part of a deliberate, willful, and malicious "smear campaign" (Orig. Counter Cl., ¶ 43) over "over a one year period". Orig. Counter Cl., ¶ 17(a).

The specific content includes the false allegation that "the offices of TechnoMedia had been "searched" by the "financial crimes unit" of the local police department. *See* Am. Countercl., ¶ 23(a). Also, TechnoMedia alleges that API republished the above "unfounded and untrue allegations of dishonesty, financial misdealings and other criminality." *Id*. at ¶ 23(d). It is hard to fathom how the language and substance of these defamatory matters could be more specific. At this stage, it is impossible

[9]TechnoMedia has included further detailed allegations in its amended counterclaim, allegations which it would have preferred not to have made due to their self-derogatory nature.

to say that statements such as these are not defamatory as a matter of law. *See Caudle v. Thomason*, 942 F.Supp 635, 639 (D.D.C. 1996) (finding in part that statements portraying the plaintiff as "participating in some questionable business activities" survived a motion to dismiss). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may only consider whether a statement *cannot* be reasonably capable of a defamatory meaning. *Armenian Assembly of America, Inc. v. Cafesjian*, 597 F.Supp.2d 128, 140 -141 (D.D.C. 2009) (internal citations omitted).[10] Therefore, "[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Id*. Because it is not possible to say that the imputation of criminal conduct and the filing of criminal complaints against TechnoMedia are capable of anything <u>but</u> a defamatory meaning – and is indeed defamatory *per se*- TechnoMedia has made more than a minimal showing to survive a motion to dismiss, and the motion should be denied.

In regard to the specific time and listener of the defamatory matter, TechnoMedia has also been specific. TechnoMedia has alleged that over a period of one year culminating in January 2009, API repeatedly wrote threatening letters to TechnoMedia. *See* Am. Countercl., ¶ ¶ 23(c), 23(f). The previous letters referenced in this allegation include API's June 5, 2008 letter. *Id*. at ¶ 23(c), 23(e). In this June 5, 2008 letter, API alleges that a local police department searched the offices of the LLC, in response to a *criminal complaint* that was filed. (emphasis added). These allegations are false as there has never been any "raid" or "search" of any offices, and even more defamatory, there was never any criminal complaint filed or investigation opened regarding TechnoMedia. API knows this, and knew it before it sent the letters and certainly before it filed its declaratory judgment action. *Id.,* ¶ ¶ 23, 24. This is a sufficient allegation of malice.

As for the listener to whom the defamatory matters were published, TechnoMedia has also been particular. TechnoMedia has simply expanded upon its original counterclaim by alleging publication of

---

[10] Texas law states: *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.); see also *Houseman*, 242 S.W.3d 518 at 524.

defamatory statements to numerous additional third parties, including various API employees, members of the API General Committee on Law, Jack Gerard, Devon Energy CEO Larry Nichols, TechnoMedia employees to whom the statements were not addressed, and an unknown third party whose fax machine was used to transmit the June 5, 2008 letter to TechnoMedia. Am. Countercl., ¶ 23. Assuming all inferences in TechnoMedia's favor, API published this defamatory letter to a third party that then transmitted the facsimile to TechnoMedia.

TechnoMedia has additionally put forth factual allegations that the June 5, 2008 letter was republished and referred to in statements to others within or connected to API via email (mentioning specifically June 24, 2008) and on information and belief, orally. Am. Countercl., ¶ 23(f). TechnoMedia alleges that the defamatory matter was spread around the API organization, which includes the author of the document providing the letter to her assistant to send out. *See* Am. Countercl., ¶ 23(d). This allegation is specific in alleging that communication of the defamatory matters occurred, at a minimum, by one agent to another agent of the same principal (i.e. API). "[C]ommunication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent, but also by the principal and this is true whether the principal is an individual, a partnership or a corporation." RESTATEMENT (SECOND) OF TORTS § 577(i) (1977). Publication is further alleged in that API's letters were sent to TechnoMedia via "facsimile, first-class and electronic mail." *See* Am. Countercl., ¶ 23(d). In sending its defamatory letters in this manner, API communicated the defamatory matter to third persons. If "an act creates an unreasonable risk that the defamatory mater will be communicated to a third person, the conduct becomes a negligent communication. A negligent communication amounts to a publication as effectively as an intentional publication." RESTATEMENT (SECOND) OF TORTS § 577(k) (1977). It is reasonable to expect and infer that letters sent by facsimile to a company's general fax number are going to be read by persons other than the defamed addressee. And in fact, this occurred. Only discovery will uncover the extent of this aspect of API's publications to third parties.

API's claim that its intra-corporate communications are privileged is unavailing in this case. Beyond TechnoMedia's factual allegations of API's malice in this regards that would keep API from hanging on this qualified privilege[11], the case law cited by API is not applicable in this case. *Turner v. Federal Express Corp.*, 539 F. Supp. 2d 404 (D.D.C. 2008); *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998); and *Stoddard v. West Telemarketing, L.P.*, 316 Fed. Appx. 350 (5th Cir. 2009), are all cases inapplicable to this case as they all pertain to the employer's qualified privilege. TechnoMedia was never an employee of API, thus API cannot avail itself of this privilege. These cases have no bearing on the matter at hand.

Further, TechnoMedia has alleged that API employees "acted in circumstances which indicated that communication to a third party by TechnoMedia was likely." Am. Countercl., ¶ 23(b) and (g). These allegations satisfy the requirement for actionable republications. *Caudle*, 942 F.Supp at 639 (finding no basis to dismiss defamation complaint where complaint allegations that "knew, or in the exercise or reasonable care should have known, that such republication would occur" satisfied notice pleading requirement for foreseeability of republication); *Foretich v. Glamour*, 753 F.Supp. 955, 961 (D.D.C.,1990) (noting original publisher of a defamatory statement is liable for a republication if the republication was reasonably foreseeable).

As shown, TechnoMedia's factual assertions supplement the plain and short statement that API defamed TechnoMedia by providing "circumstances, occurrences, and events." *See e.g. Twombly*, 550 U.S. at 555 n. 3 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1202 at 94 (3d ed. 2004)). TechnoMedia submits that "enough facts have been alleged to raise a reasonable expectation that discovery will reveal evidence," – as it already has – detailing additional defamatory statements and publications to third parties. *Id*. at 556 API cannot argue that it has not been put on notice. Accordingly, because these facts clearly satisfy the minimal notice pleading requirement, and giving every favorable

---

[11] For example, TechnoMedia's allegation of malice is fleshed out by alleging that API intended to harm the business, credit, and sales of TechnoMedia by singling out TechnoMedia president for disparaging and defaming accusations. Am. Countercl., ¶ 23(e).

inference that may be drawn from the allegations of fact to TechnoMedia, the Court should deny API's motion to dismiss for failure to state a claim.

*2. **Neither the January 2009 nor the June 2008 letters are covered by any privilege.***

API additionally argues that the defamation claim must be dismissed because a party to a private litigation is absolutely privileged to publish defamatory matter. *See* API's Memorandum of Points and Authorities in Support of Motion to Dismiss, ¶ 9. API believes that since API filed a declaratory action based upon its alleged right to breach the Contract, that over a year before the lawsuit is filed, API is allowed to make defamatory statements, which are unequivocally false statements and which API knows are false. API's reliance on the judicial proceedings privilege is misplaced. The purpose of the judicial proceedings privilege is to protect statements made for the purpose of preparing for litigation or attempting to settle issues prior to commencing litigation. An absolute privilege "is not lightly conferred, however, as it protects deliberate lies told with intent to destroy reputation." *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 341 -342 (D.C. 2001). The court in *Finkelstein* noted that "[e]specially where no judicial proceeding has begun, caution is warranted lest we countenance 'a privilege for a lawyer to be bumptious and unrestrained in all matters vaguely related to litigation and regardless of whether the communication is calculated to advance or to retard justice or the [potential] proceeding.'" *Id*. (citing CHARLES W. WOLFRAM, MODERN LEGAL ETHICS 231 (1986)). The defamatory statements in this case, in addition to being made prior to the litigation, were not made in preparation of litigation or in an attempt to settle. *Marsh,* 339 F. Supp.2d at 6.[12] Simply put API's position would alleviate any cause of action for defamation because a party could make a defamatory comment and then file a declaratory action regarding that very defamatory comment and state that it was privileged because there is a lawsuit regarding the defamatory comment. The *Finkelstein* court, almost presciently as it relates to API's actions, noted that "[t]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not

[12] TechnoMedia has found no case law to support a pre-litigation privilege under Texas law.

seriously considered." *Finkelstein.*, 774 A.2d at 342 (referencing RESTATEMENT (SECOND) OF TORTS § 586 comment e).

In this case, API was not preparing for litigation, nor attempting to settle prior to litigation. There is no reference to litigation in the letters at issue and the facts of this case do not rise to the level of facts found in cases cited by API. For example, in *Marsh v Hollander*, the court only found the privilege attached because, in part, the plaintiff himself "conced[ed]" that the statement at issue was made "preliminary to possible judicial proceedings" *Marsh*, 339 F.Supp.2d at 8. In this case, TechnoMedia has made no such concession.

A further example showing that API's privilege claims are inapplicable in this case is found in even a cursory analysis of the facts in *Messina v. Krakower*, 439 F.3d 755, 760-762, 370 U.S.App.D.C. 128, 133 – 135 (C.A.D.C. 2006). In *Messina*, the court noted what would be needed to bring a defamatory letter within the contours of the privilege. For instance, the *Messina* court noted that "[t]he letter explained that it was 'for settlement purposes,' proposed a 'win/win scenario,' and warned of a 'lose/lose scenario' if settlement failed and [the party writing the letter] were 'forced to commence legal proceedings and/or dissolution of the Corporation.' … It described possible causes of action available… [and] then reiterated the threat of litigation twice more." *Id*.

When contrasting the statements in the letter at issue in Messina to the letters API references in its motion to dismiss, it is clear that API's letters fall wide of the mark needed for this privilege to apply. The January 2009 letter was not in contemplation of a potential lawsuit or for settlement, it was a termination letter. The letter does not at any point or in any fashion discuss or even contemplate litigation or settlement. Moreover, the defamatory statements are not related to these proceedings but are the facts of these proceedings. The privilege protects defamatory statements in contemplation of the proceedings; but the privilege does not protect defamatory statements that are at the heart of the factual components of the proceedings. The January 2009 letter is at the heart of the factual issues presented by both API and TechnoMedia. Therefore, it is clear that the January 2009 was not written in preparation for these proceedings but is the basis for these proceedings. Moreover, the June 2008 letter is more than seven

months removed from even the January, 2009 letter. Again there were no threats of litigation or attempts to settle any claims. Assuming all inferences in TechnoMedia's favor, there is no showing that this letter was in anticipation of a judicial proceeding. As such, API's reliance on this limited privilege should be disregarded.

***3. TechnoMedia's Amended Counterclaim relates back to the time of its initial pleading because the amended counterclaim merely elaborates on the same defamatory conduct, transactions, and occurrences set out in the original pleading.***

Federal Rule of Civil Procedure 15 (c) (1) (B) states that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — *or attempted to be set out* — in the original pleading." (emphasis added). The general practice under Rule 15(c) is to permit relation back so long as the new claim arose out of the defendant's conduct as set forth in the original complaint and the original complaint *gave defendant notice sufficient to avoid prejudice*. *Foretich v. Glamour,* 753 F.Supp. 955, 962 (D.D.C. 1990) (emphasis added).

API's reliance on *Foretich* in regards to the relation back doctrine is misplaced. The *Foretich* court found that the defamation claim in that case did not relate back because it was not until the amended complaint was filed that the defamation plaintiffs "even suggested that they sought to claim for specific conduct by defendants with respect to any republication." *Id*. The court found that the defamation defendant, "[a]t the time he received service of the original Complaint, … knew that he had played a role in [allegedly defamatory] distribution, but he had no reasonable basis to believe from the face of the complaint that he was being sued for anything other than the original publication." *Id*.

Such is not the case here. Here, the original counterclaim alleged a number of communications, over the course of a year, by API, relating to the false allegations of dishonesty, financial misdealing, and other criminality culminating in the January 12, 2009 letter. The amended counterclaim merely expands upon the same allegations contained in the same defamation cause of action of the original counterclaim. TechnoMedia has not asserted any new defamation claim or a new time frame of API's defamation. As

such, the amended counterclaim clearly falls within the confines of the relation back doctrine codified in the federal rules of civil procedure.

For example, if the original counterclaim had alleged only a libel cause of action, and the amended counterclaim added a slander claim, then API's argument may have had some merit. *See e.g. Caudle*, 942 F.Supp at 641 (finding amended complaint's separate slander claim involved "publications entirely distinct" from the original complaint's separate libel claim). Unfortunately for API, this is not what happened. TechnoMedia merely expanded upon the same defamation claims alleged in the original counterclaim. Both of them relate to the same general conduct, transaction, and occurrence which involve defamatory statements regarding criminality and other misdeeds. There was no departure. The cause of action now, as it was in the beginning, is the same – a claim for defamation. There is simply no reason to apply a statute of limitations when, as here, API has had notice from the beginning that TechnoMedia is seeking to bring a defamation cause of action against API because of its false statements regarding "dishonesty, financial misdealing, and other criminality". As demonstrated, API's motion to dismiss should be denied.

***4. TechnoMedia has sufficiently pled its disparagement claim.***

As has been demonstrated herein, at the 12(b)(6) stage, a complaint "need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Washington v. District of Columbia*, 538 F.Supp.2d 269, 273 -274 (D.D.C. 2008) (internal citations omitted). Further, "[s]uch simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Id*. (citing *Conley*, 355 U.S. at 47-48, 78 S.Ct. 99). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Id*. (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) or "plead law or match facts to every element of a legal theory," *Id*. (Citing *Krieger v. Fadely*,

211 F.3d 134, 136 (D.C.Cir.2000)). To satisfy notice pleading requirements, a plaintiff need only "allege a 'plausible entitlement to relief,' by setting forth 'any set of facts consistent with the allegations.'" *Id*. (citing *Twombly*, 127 S.Ct. at 1967, 1969).

TechnoMedia's Disparagement claim has been sufficiently pled for the same reasons demonstrated above in regards to its defamation claim. TechnoMedia has sufficiently pled publication and republication of defamatory statements to third parties within API , with those connected to it, and actionable self-publication. As explained above, TechnoMedia pled more than conclusory allegations in regards to malice in that it has provided details of API's smear campaign. TechnoMedia has indeed alleged special damages[13], such as "harm to the business, credit, and sales of TechnoMedia" Am. Countercl., ¶ 23(e); such as API depriving TechnoMedia of revenue generating opportunities including Worksafe and qualification centers. See Am. Countercl., ¶ 26. Such factual allegations clearly surpass the minimal pleading standards and sufficiently put API on notice.

Further, even if this Court found that TechnoMedia did not specifically state special damages, the lack of stating the correct measure of damages does not warrant dismissing the case at this stage. *See e.g. PdP Parfums de Paris, S.A. v. International Designer Fragrances, Inc.*, 901 F.Supp. 581, 585 (E.D.N.Y.,1995) (finding defendant not entitled to dismissal for insufficiency even where complaint failed to state the correct measure of damages in special damages claim (fraud)).

Lastly, TechnoMedia's disparagement claim is separate and distinct from its defamation claim. As API itself mentions the elements are different. As such, even if the disparagement claim was governed by D.C. Law – and it is not- the defamation statute of limitations is not applicable. Even if this Court determined that is was, as demonstrated above, TechnoMedia was timely in its counterclaim and the Amended Counterclaim relates back to the original filing.

[13] *See* generally Am. Countercl., ¶¶ 22, 23, 24, 25, 26, 27, 28, 29.

**D. TechnoMedia Has Sufficiently Pled Its Intentional Interference with Economic Advantage Claim.**

In TechnoMedia's Amended Counterclaim, it has sufficiently pled a claim for intentional interference with economic advantage. API alleges that TechnoMedia's cause of action for intentional interference should be dismissed because (i) TechnoMedia has failed to plead intent, (ii) there can be no interference because it cannot be caused by the defendant's breach of his own contract with plaintiff, and (iii) the communication between API's counsel and the Carrollton, Texas Police Department cannot constitute tortuous interference. *See* API's Memorandum of Points and Authorities in Support of Motion to Dismiss, ¶ 21-22. API's allegations are baseless.

***1. Intent.***

The elements under D.C. law for interference for economic advantage are (i) the existence of a valid business relationship or expectancy, (ii) knowledge of the relationship or expectancy on the part of the interferer; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy and (iv) resulting damage. *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 592 F. Supp. 2d 86, 98 (D.D.C. 2009) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir. 2002). In their second motion to dismiss, API only alleges that TechnoMedia failed to plead intent.

In support of this position, API relies on *Bennett Enterprises, Inc. v. Domino's Pizza, Inc*, a case in which the court found there was no evidence of intent *AFTER A TRIAL*. *Bennett Enterprises, Inc. v. Domino's Pizza*, 45 F.3d 493, 499 (D.C. Cir. 1995) (emphasis added). *Bennett Enterprises* is therefore irrelevant to the current motion to dismiss in this court. In addition, API relies upon *Command Consulting Group, LLC v. NeuralIQ, Inc.*, which granted a motion to dismiss because the plaintiff failed to plead the existence of a valid business expectancy and because he failed to plead any facts to support intent. *Command Consulting Group, LLC v. Neuraliq, Inc*. No. Civ. A. 09-0219, 2009 WL 1593229 at * 3-4 (D.D.C. June 9, 2009). The court in *NeuralIQ* went on to say that "[i]n a claim for interference with a business advantage, "the requisite intent is met if behavior involves egregious conduct, such as libel,

slander, physical coercion, and fraud." *Id.* (citing *Sheppard v. Dickstein*, 59 F.Supp.2d 27, 34 (D.D.C. 1999).

In contrast to *NeuralIQ*, TechnoMedia has pled egregious conduct, including defamation and business disparagement. Moreover, TechnoMedia is only required to plead a strong showing of intent to disrupt TechnoMedia's on-going and expectant business. *Nat'l R.R.*, 592 F.Supp.2d at 99. TechnoMedia has pled that API intentionally interfered with TechnoMedia's expectant business, through its defamatory statements, statements to TWL regarding the Contract, collusion with Quinn and improper termination of the Contract. *See* Am. Countercl., ¶ ¶ 26, 28. Therefore, TechnoMedia has sufficiently pled a cause of action or intentional interference.

**2. *Breach of its own contract.***

API requests this court to grant a motion to dismiss TechnoMedia's prospective business expectancy based upon a fact issue prior to any discovery, and when API has refused to provide even basic initial disclosures. Specifically, API asks this court to dismiss TechnoMedia's prospective business expectancy because "the interference is caused by the defendant's breach of his own contract with plaintiff." *See* API's Memorandum of Points and Authorities in Support of Motion to Dismiss, ¶ 22. (citing *Bus. Equip. Ctr. Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978). Yet again, API's reliance on *Business Equipment Center* is misplaced. *Business Equipment Center* is a case involving a motion for summary judgment, not a motion to dismiss before any discovery has commenced. CITE. API also relies on *King & King*, which only holds that a person cannot be liable for interfering with his own contract. *King & King Chartered v. Harbert Int'l, Inc.* 503 F. 3d 153, 157 (D.C. Cir. 2007). Clearly, *King & King* is inapplicable because TechnoMedia has not alleged interference with the contracts between API and TechnoMedia but alleged interference with prospective advantageous business including (i) the Qualification Centers, which included the memorandum of understanding with the national oil company of Malaysia and two other centers that were to close by December 2007, (ii) its current and future business customers, which includes Greymouth Petroleum, Origin Energy based out of Australia and Pride International; and (iii) its potential contracts with Coastal and WCS/CUDD. *See* Am.

Countercl., ¶¶ 83(e), 28(l). In addition, to *Business Equipment Center* and *King & King*, API relies on a string cite of cases which are irrelevant to the matter before this court because all the cases hold in similar fashion that a person cannot be liable for interfering with his own contract. See *Shenandoah Assocs. Ltd. v. Tirana*, 322 F. Supp. 2d 6, 10 (D.D.C. 2004); government *Relations Inc. v. Howe*, No. 05-1081, 2007 U.S. Dist. LEXIS 4952, at *29-30 (D.D.C. Jan. 24, 2007); and *Oblio Telecom, Inc. v. Patel*, No. 08-0279, 2009 U.S. Dist. LEXIS 49224, at *18 (N.D. Tex. June 10, 2009)[14]. As set forth herein and in its Amended Counterclaim, TechnoMedia has sufficiently alleged API's interference with TechnoMedia's prospective business expectancy was caused by more than just API's breach of contract. Moreover, API's reliance on *In re Beitzell* is misplaced. *In re Beitzell*, 163 B.R. 637, 656 (Bankr. D.D.C. 1993). In *Beitzell*, the court found that if the alleged breach of contract resulted in the breach of another third party agreement, the plaintiff's remedy is not a claim for tortious interference with contract; rather, it is an element of damages for the plaintiff's breach of contract claim. *Id*. In this case TechnoMedia has pled that API interfered by taking action outside of the unlawful termination of the TechnoMedia-API agreements. Therefore, *Beitzell* is inapplicable.

***3. Communications with Carrollton Police.***

The communications between API's counsel and the Carrollton Police are facts that support (i) API's intent to interfere[15]; and (ii) API's interference with TechnoMedia's relationship with TWL. In addition, as set forth above, the agreements and expectant agreements interfered with are set forth in the Amended Counterclaim at ¶ 83(e).

TechnoMedia has sufficiently pled a claim for tortuous interference and API's motion to dismiss should be denied.

---

[14] The Court in *Oblio* only recites that a party must plead the contract that was intervened. Regardless, *Oblio* does not support API's motion to dismiss because TechnoMedia pled the contracts that API intervened.

[15] API relies on *NeuralIQ* which states that "[i]n a claim for interference with a business advantage, "the requisite intent is met if behavior involves egregious conduct, such as libel, slander, physical coercion, and fraud." *Id.* (citing *Sheppard*, 59 F. supp. 2d at 34. Therefore, TechnoMedia's reliance on by API's defamatory actions in connection with the Carrollton Police Department are required to support API's intent and should not be dismissed on statute of limitations claims.

### D. TechnoMedia Has Sufficiently Pled That API Misappropriated TechnoMedia's Trade Secrets[16]

API asks this court to dismiss TechnoMedia's misappropriation of trade secrets claim on the theory that since TechnoMedia provided TWL with *some* trade secrets, that API was free to provide ALL trade secrets to TWL. Such a holding is absurd. TechnoMedia pled that it provided certain trade secrets with TWL, which were not necessarily, the same trade secrets provided to API. *See* Am. Countercl., ¶ 19. API deems it vital to ask this court to grant a motion to dismiss based upon the term "necessary" in the pleadings. *See* Motion to dismiss, ¶ 24. Instead of taking the statement for what it means, i.e. that there were trade secrets provided to API that were not provided to TWL, API decides that the best course of action is to file the motion to dismiss based upon perusing the language used by TechnoMedia, specifically the term necessarily. API then determines that the language used by TechnoMedia could be interpreted to mean that maybe the trade secrets were the same. The trade secrets are in fact not the same. Moreover, TechnoMedia has also alleged that API provided the trade secrets to former agents of TechnoMedia and/or competitors of TechnoMedia. Therefore, the motion to dismiss should be denied.

Moreover, this court is to review the motion to dismiss and determine if there are sufficient facts to put API on notice of the cause of action and a set of fact that could support. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). TechnoMedia's cause of action for misappropriation has clearly accomplished this task. API's litigation tactic of confusing this issue and scrutinizing every word used by TechnoMedia is inappropriate at this stage of the proceedings.

The facts, as alleged in the Amended Counterclaim, are (i) API misappropriated and divulged trade secrets of TechnoMedia to Cagan, Quinn, TWL or other third parties; (ii) API made unauthorized use and disclosure of TechnoMedia's trade secrets by requesting proposals to former agents and/or competitors of TechnoMedia for the development of TechnoMedia's trade secrets; and (iii) API has continued to use the trade secrets after the alleged termination and upon TechnoMedia's request for the

[16] It is important to note that the TechnoMedia's amended counter-claim includes a cause of action for common law conversion that is not addressed by API's motion to dismiss. *See* Am. Countercl., ¶ ¶ 36-47.

return. *See* Am. Countercl., ¶ ¶ 28, 39 - 43. API's position is even more absurd because they have refused to return TechnoMedia's trade secrets since wrongfully terminating the Contract. Even if API had a right prior to the termination of the Contract to use the Confidential Information, such right was terminated upon the termination of the Contract. Therefore, API's use of the trade secrets outside the scope of the Contract is a misappropriation of TechnoMedia's trade secrets.

Additionally, API's reliance on *Twombly* is misplaced. *Twombly* holds that a party must "simply [call] for enough fact to raise a reasonable expectation that discovery will reveal evidence." TechnoMedia has provided enough facts to raise a reasonable expectation that discovery will reveal evidence. Moreover API previously relied *Orthovita*, which specifically states that it is ***declining*** to apply *Twombly* to a trade secret case. *Orthovita Inc. v. Erbe*, No. Civ.A. 07-2395, 2008 WL 423446, at *9 (E.D. Pa.. Feb. 14, 2008)**.** The only pleading in *Orthovita* is that the trade secrets were provided to potential investors, without naming the actual names. Similarly, TechnoMedia has named former agents and/or competitors and therefore has met the requirements set forth in *Orthovita*.

In the current motion to dismiss, API incorrectly relies on *Knights Armament*. *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008). In *Knights Armament*, the plaintiff only alleges that the defendants misappropriated trade secrets in violation of [their] contractual and confidential relationship, unlawfully disclosed the trade secrets, and/or unlawfully used the trade secrets. *Id*. The *Knights Armament* court notes that the plaintiff "gives no further details as to how the [d]efendants allegedly used the trade secrets." *Id*. Unlike the plaintiff in *Knights Armament*, TechnoMedia pleadings including the following: (i) upon information and believe API requested proposals to former agents of TechnoMedia and/or competitors of TechnoMedia for the development of TechnoMedia's trade secrets; and (ii) API has refused to return the trade secrets to TechnoMedia as requested. See Amended Counterclaim at 27. Therefore, TechnoMedia has pled sufficient allegations to show how API used the trade secrets and *Knights Armament* is distinguishable.

Additionally, API relies upon *All Business Solutions*, which again is distinguishable. *All Bus. Solutions, Inc. v. NationsLine, Inc.*, No. Civ. A. 7:09CV00013, 2009 WL 1850306 (W.D. Va. June 29,

2009). In *All Business Solutions*, the plaintiff merely alleged that the defendant "sought" to use the misappropriated trade secrets. The court found that mere "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to withstand a motion to dismiss. *Id.* In TechnoMedia's Amended Counterclaim, TechnoMedia has set forth sufficient facts that API was disclosing TechnoMedia's trade secrets to TWL, Cagan, Quinn, TechnoMedia's former agents and competitors, including connections with the Qualification Centers.

Lastly, API asks this court to dismiss TechnoMedia's misappropriation of trade secrets because TechnoMedia did not plead fraud with particularity mandated by Fed. R. Civ. P. 9(b). In support of its position, API relies on *Government Relations Inc. v. Howe*[17] 2007 U.S. Dist. Lexis 4952, at *43-45. However, as is the case with the other support cited by API, reliance on this case is yet again misguided. In *Howe*, the court dismissed the misappropriation of trade secrets claim because the plaintiff failed to plead a trade secret. *Id*. At no point in the discussion of misappropriation of trade secrets, is "fraud" discussed. *Id*. Instead, in a separate section of the opinion, the court discusses dismiss the plaintiff's fraud claim for lack of particularity. *Id*. API's motion to dismiss misappropriation of trade secrets should be denied.

**E. TechnoMedia Sufficiently Pled Fraud/Fraud in the Inducement.**

As set forth in TechnoMedia's Amended Counterclaim, TechnoMedia sufficiently pled fraud and/or fraud in the inducement of the Contract. Specifically, on or about December 2004, Kathleen Combs, misrepresented to TechnoMedia that entering into the Contract would not terminate the Confidentiality Agreement. However, within less than a year, API was violating the Confidentiality Agreement and has taken the position that the Confidentiality Agreement was superseded by the Contract. API's subsequent actions of misappropriating the Confidential Information coupled with refusing to return the Confidential Information and its advice to TechnoMedia not to hire an attorney to review the

[17] In addition to Howe, API relies on *TSC Research, LLC v. Bayer Chems. Corp*. and *Foam Supplies, Inc*., neither of which hold that a party must plead particularity in connection with a misappropriation of trade secrets case. *TSC Research, LLC v. Bayer Chems. Corp*., 552 F. Supp. 2d 534, 546-46 (M.D.N.C. 2008); and *Foam Supplies, Inc. v. Dow Chem. Co*., No. 05-1172, 2006 U.S. Dist. LEXIS 53497, at 42-43 (E.D. Mo. Aug. 2, 2006).

Contract are sufficient allegations to reflect API's intent to terminate the Confidentiality Agreement upon execution of the Agreement. Therefore, TechnoMedia was fraudulently induced into entering into the Contract by API's statement that the Confidentiality Agreement would remain in full force and effect.

Although the Amended Counterclaim clearly states that API fraudulently induced API into entering into the Contract, API erroneously bases its motion to dismiss on API's fraudulent inducement of the Confidentiality Agreement. For clarification purposes, the fraudulent claim is based upon the representations made by Combs, of API, during the negotiations of the Contract, not the Confidentiality Agreement. During the negotiations, Combs represented that the Confidentiality Agreement would remain in full force and effect after the execution of the Contract. After making this representation, API subsequently took the position that the Confidentiality Agreement was terminated; thereby injuring TechnoMedia. API clearly never intended to carry out that representation, or it would not have advised TechnoMedia not to hire an attorney and would not have begun misappropriating the Confidential Information within less than a year of the execution of the Contract.

TechnoMedia is not required, as API suggests, to show intent not to perform in 2004. Motion to Dismiss, ¶ 26. TechnoMedia provided facts sufficient to show that API fraudulently induced TechnoMedia in 2005 to enter into the Contract, by representing that the Confidentiality Agreement would remain in full force and effect after the execution of the Contract and that TechnoMedia should not hire or consult with an attorney.

Therefore, API's motion to dismiss should be denied.

**F. TechnoMedia Sufficiently Pled Breach of Fiduciary Duty.**

The existence of a fiduciary duty depends on many factors including, the past history of the parties, the relationship, the prior conduct and the extent of the relationship beyond the limits of the contractual obligations. *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994). A fiduciary duty exists when "one party 'is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." *Id.*(quoting RESTATEMENT (SECOND) TORTS § 874, comment a). TechnoMedia has sufficiently alleged that the relationship between TechnoMedia and

API was that of more than mere parties to a contract, but a relationship cultivated over several years, in which API held itself out as a leader in the oil and gas industry and provided advice to TechnoMedia with regard to hiring an attorney, what form of entity to run the contract through and the operation of the Qualification Centers. Moreover the conduct of API and TechnoMedia formed a common-law partnership. *See* Am. Countercl., ¶ 14(c), 15. As a partner, API owed a duty to TechnoMedia. *Singer v. Scher,* 761 F.Supp. 145, 146 (D.D.C. 1991). API is seeking a motion to dismiss, not on the pleadings, but upon a finding that no fiduciary relationship exists. *See* Motion, ¶ 28. At this stage of the proceedings, TechnoMedia is required to put API on notice of its claims, not to prove its claims prior to discovery. TechnoMedia has met this requirement and the motion to dismiss should be denied.

Yet again, API's reliance on a case it cited is misplaced. *See* API's Memorandum of Points and Authorities in Support of Motion to Dismiss, ¶ 27. In *Steele v. Isikoff*, the court determined that there could not have been a fiduciary relationship because the parties' relationship was "fleeting," as it was limited to several short telephone calls and one face to face meeting. *Steele v. Isikoff*, 130 F.Supp. 2d 23, 37 (D.D.C. 2000). As opposed to the facts in *Steele*, TechnoMedia and API's relationship lasted almost five (5) years and was anything but fleeting.

Moreover, API's reliance on the string of cases cited is misplaced. In *Geiger*, the court found there were no facts presented to give rise to a fiduciary or special relationship. *Geiger v. Crestar Bank*, 778 A. 2d. 1058, 1095 (D.C. 2001). *Geiger* provides no assistance to the current situation, when a relationship of several years formed a fiduciary relationship, in which API offered advise outside the realm of the Contract, by providing advise on the Confidentiality Agreement, on whether or not to seek assistance from an attorney, on entity formation and where API itself referred to the relationship as a joint venture. *Id;* see Am. Countercl., ¶¶ 14 - 16. *Geiger* is further distinguished from this case because it was a summary judgment case, in which the court did look outside the terms of the agreement and found that the deposition testimony showed "virtually no interaction" between the parties. *Id*. In this case, API is seeking a motion to dismiss without the aid of any discovery and TechnoMedia has pled and intends to prove through discovery, that during their relationship, API and TechnoMedia had numerous contacts,

through email, phone calls and meetings over the length of their relationship. Likewise, *Regency Communications* is case regarding fraud claims based on promises made in a contract and does not discuss breach of fiduciary duty, other than the one sentence in dicta cited by API. *Regency Commuc'ns v. Cleartel Commuc'ns*, 160 F. Supp. 2d 36, 42 (D.D.C. 2001). Additionally, the sentence referred to by API only states that "[t]he contracts were negotiated and entered into at arms length, and as such, no fiduciary relationship arises." *Regency Communications* does not discuss what an "arms length" transaction entails, nor does it discuss a situation in which one party provides promises regarding a confidentiality agreement, encourages the other party not to hire an attorney or advises the other party on the type of entity it should use.

In yet another "big law" maneuver, API alleges that TechnoMedia is engaged "[i]n a futile effort to circumvent this well established law." Motion at 27. Yet, it is API that is attempting to have this court dismiss TechnoMedia's breach of fiduciary duty claims, not on the pleadings, as required by the Federal Rules of Civil Procedure, but based on a fact issue prior to discovery. It is API that is making the futile effort to circumvent the Federal Rules of Civil Procedure. API goes further to state that API and TechnoMedia could not have formed a joint venture partnership because the Contract, which was written by API and not reviewed by counsel for TechnoMedia, says so. Motion at 27. API then cites a string of cases that hold that an unambiguous contract may not be contradicted by extrinsic evidence. Motion at 28. However, API neglects to recognize that the language in the contract is nothing more than evidence of the intent of the parties. *First Nat'l Bank and Trust Co. of Oklahoma City v. Sidwell Corp.,* 678 P.2d 118, 124 (Kan. 1984). However, contrary to the contract language is the conduct and statements of the parties, which includes API references to the relationship as a joint venture.

Lastly, API's reliance on *Four Bros. Boat Work, Inc.*; *Muir;* and *Crim Truck* are likewise misplaced because the issue in each of these cases analysis a fiduciary relationship based upon the facts of that specific case, none of which are on point to the facts in this case, and in each instance there was an opportunity for discovery. *Four Bros. Boat Work, Inc. v. Tesoro Petroleum Co.*, 217 S.W. 3d 653, 669 (Tex. App. – Houston [14th Dist.] 2006) *rehearing overruled*; *Muir v. Navy Fed. Credit Union*, No. 03-

1193, 2005 U.S. Dist. LEXIS 3559, at *5-6 (D.D.C. Mar. 1, 2005); *aff'd in relevant part*, 529 F. 3d 1100 (D.C. Cir. 2008) (finding on summary judgment that a bank does not owe a fiduciary relationship to a depositor); and *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 (Tex. 1992) (finding that no fiduciary duty was created between franchisor and franchisee).

API breached its fiduciary duty by conspiring with Quinn and TWL, defaming TechnoMedia, allowing TechnoMedia's courseware to be advertised on Ecoman's website and improperly terminating the Contract. Therefore, TechnoMedia sufficiently pled a breach of fiduciary duty and it should not be dismissed.

## III. CONCLUSION

Because TechnoMedia has sufficiently pled all of its causes of action, this Court should deny API's second motion to dismiss. As demonstrated above, TechnoMedia has far exceeded the minimal requirements of notice pleading with specific factual allegations for all its claims. API's attempts to suggest otherwise should be seen for what they are: nothing more than "Big Firm" motion practice.

Finally, pursuant to Local Rule 7.1(f), TechnoMedia respectfully requests oral argument.

Dated: July 27, 2009

Respectfully submitted:

**Brewer & Pritchard, P.C.**

**_____/s/____________**
J. Mark Brewer, Texas Bar 02965010 (*pro hac vice)*
Three Riverway, Suite 1800
Houston, Texas 77056
Phone: (713) 209-2950
Fax: (713) 659-5302
Email: Brewer@bplaw.com
**Attorney for Defendant,**
**TechnoMedia International, Inc.**

Of Counsel:

_____/s/____________
Anthony D. Martin
D.C. Bar No. 362537
ANOTHONY D. MARTIN, P.C.
Belle Point Office Park
7841 Belle Point Drive
Green belt, MD 20770
Phone: (301) 220-3700
Fax: (301) 220-0791

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served on counsel of record electronically using the Courts ECF system.

Eric Bosset
Bradley K. Ervin
Dennis B. Auerbach
Covington & Burling, LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401

Harry M. Ng
General Counsel
Michael R. See
Senior Counsel
American Petroleum Institute
Office of the General Counsel
1220 L. Street, N.W.
Washington, D.C. 20005

_____/s/____________
J. Mark Brewer