**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, | ) |
| | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| | ) |
| v. | )    Civil Case No. 09-529 (RJL) |
| | ) |
| TECHNOMEDIA INTERNATIONAL, INC., | ) |
| | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |
| | ) |

**MEMORANDUM OPINION**
(March **30**, 2010) [#23 and 39]

This breach of contract lawsuit arises from a business deal gone haywire. The

American Petroleum Institute ("API") claims that TechnoMedia International, Inc.

("TechnoMedia")—a Texas company that provides computer-based training courses for oil

and gas industry workers—breached its contract to develop, market, and sell e-learning

materials under the API trademark. API seeks declaratory relief, unpaid royalties, and

money damages for the breach. Not long after API commenced this suit, the parties filed a

flurry of motions. TechnoMedia moved first to dismiss the complaint [#14], and then it

filed an answer raising scattershot counterclaims against API [#18], which have since been

amended [#32]. API, in turn, filed a motion to dismiss the counterclaims and a motion to

strike what it believes to be scandalous allegations made by TechnoMedia [#20], both of

which have been renewed in light of TechnoMedia's amendments [#39]. API also moved

for partial summary judgment on the merits [#22]. Shortly thereafter, TechnoMedia filed a

motion for preliminary injunction [#23], asking the Court to enjoin API from using or retaining confidential trade secret information that TechnoMedia disclosed to API during the course of their contractual relationship.  The Court has since denied TechnoMedia's Motion to Dismiss and API's Motion for Partial Summary Judgment.  (*See* Minute Orders dated Mar. 9, 2010).  All that remain are (1) API's Motion to Dismiss Counts 1-3 and 5-6 of TechnoMedia's Amended Counterclaim and to Strike Allegations of the Amended Counterclaim [#39] and (2) TechnoMedia's Application for Preliminary Injunction [#23].  For the following reasons, API's motion, in large part, is GRANTED, and TechnoMedia's is DENIED.

## BACKGROUND[1]

API and TechnoMedia commenced discussions in 2004 to explore the possibility of forming a business relationship.  (Def.'s App. for Prelim. Inj. [#23] at 4).  Before formalizing their relationship, API requested confidential information from TechnoMedia to assist it in evaluating TechnoMedia's products and services.  (*Id.*; Ex. 1 [#23-2] at 5).  As a result, the parties entered into a non-disclosure agreement in August 2004 whereby API agreed to protect any confidential information disclosed by TechnoMedia at API's request.  (Am. Countercl. [#32] ¶ 14(b); Ex. 1 [#23-2] at 5).  In March the following year, the parties executed a contract entitled "Agreement to Develop and Market API-Branded Products and Services in Electronic Media Formats" (the "API-TechnoMedia Agreement"), under which API granted TechnoMedia an exclusive license to use API's trademark for the purpose of

---

[1] Because this case is before the Court on API's Motion to Dismiss, the Court recounts the facts below, unless otherwise noted, as they are depicted by TechnoMedia.

2

developing, marketing, and selling TechnoMedia's computer-based training courses for workers in the petroleum industry. (Compl., Ex. A [#1-1]).[2]

Almost two years later, in January 2007, TechnoMedia joined with another company named TWL Knowledge Group, Inc. ("TWL") to form a joint venture known as TWL Skill Ventures, LLC ("Skill Ventures"). (Am. Countercl. [#32] ¶¶ 11, 12, 17). The purpose of the joint venture was to enhance the marketing and sales of API-branded e-learning products distributed by TechnoMedia. (*Id.* ¶ 17). But good will between TechnoMedia and TWL was, to say the least, fleeting. By the end of the year, TWL's principals, Dennis Cagan and Patrick Quinn, allegedly launched a concerted effort to "usurp" the API-TechnoMedia Agreement. (*Id.* ¶¶ 20-21). According to the Amended Complaint, Cagan and Quinn conspired with API to deprive TechnoMedia of opportunities to which it was entitled under the Agreement. (*Id.* ¶ 20). In addition, Cagan and Quinn allegedly commenced a campaign to smear TechnoMedia and its owner. (*Id.* ¶ 22). Specifically, TechnoMedia claims that Cagan and Quinn made statements to "senior staff personnel of API" alleging "dishonesty, financial misdealing and other criminality" by TechnoMedia. (*Id.* ¶ 22(a)). TechnoMedia also claims that Cagan and Quinn told senior API officials that TechnoMedia's offices "had been 'searched' by the 'financial crimes unit' of the local police department." (*Id.* ¶ 22(b)). The API officials then republished these defamatory statements "throughout the API organization." (*Id.* ¶ 23). This campaign of disparagement allegedly "caused distrust,

---

[2] Because TechnoMedia specifically references and relies upon the API-TechnoMedia Agreement in its Amended Counterclaim, the Court may consider the document in deciding API's Motion to Dismiss. *See Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 5 (D.D.C. 2007) ("The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.").

animosity and hostility" that ultimately prompted API to wrongfully terminate its contractual relationship with TechnoMedia. (*Id.* ¶¶ 23, 23(c), 26).

Besides republishing Cagan and Quinn's defamatory accusations, TechnoMedia claims that API made defamatory statements of its own by repeatedly warning TechnoMedia that it was in breach of contract. (*Id.* ¶ 23(c)). TechnoMedia points specifically to API's June 2008 letter to TechnoMedia in which API made allegedly false representations that TechnoMedia and its owner had committed "misrepresentation," "concealment," "fraud," and "theft." (*Id.* ¶ 23(d)). TechnoMedia alleges that this letter was published to a number of third parties, including API employees, API's in-house and outside counsel, members of API's General Committee on Law, API's president and chairman, as well as employees of TechnoMedia. (*Id.* ¶ 23(d), (f)). As further support for its defamation allegations, TechnoMedia also points to API's January 2009 letter formally terminating the API-TechnoMedia Agreement. (*Id.* ¶ 23(h)-(i)).

In addition to these charges of defamation and disparagement, TechnoMedia alleges that API engaged in a bad faith course of conduct aimed at replacing TechnoMedia with TWL as the distributor of API-branded e-learning products. TechnoMedia claims, for instance, that TWL, in conspiracy with API, filed a fraudulent lawsuit against TechnoMedia in Texas court to disrupt TechnoMedia's e-learning business. (*Id.* ¶ 24). TechnoMedia also claims that API falsely represented to TWL that "TWL Skill Ventures" was the "exclusive distributor" of API-branded products. (*Id.* ¶ 29). Furthermore, TechnoMedia alleges that API, not TechnoMedia, breached their contract by refusing to deal with TechnoMedia in good faith. (*Id.* ¶ 28). Among the more provocative allegations raised by TechnoMedia is

its claim that API acquiesced in the distribution of TechnoMedia's API-branded materials to a foreign company called Ecoman, which "API knew or should have know[n] . . . was providing the content to Iran." (*Id.* ¶¶ 30-35). This allegation prompted API to file its pending motion to strike.

Not only did API allegedly breach its obligations under the API-TechnoMedia Agreement, TechnoMedia alleges that API breached the parties' 2004 non-disclosure agreement as well. Specifically, TechnoMedia claims that "API misappropriated and divulged trade secrets of TechnoMedia to Cagan, Quinn, TWL or other third parties, including TechnoMedia's competitors and former agents." (*Id.* ¶ 39). TechnoMedia also claims that API continues to use and to disclose TechnoMedia's trade secrets without authorization and that API refuses to return the trade secrets as requested. (*Id.* ¶ 40(e)).

In light of this myriad of allegations, TechnoMedia filed a six-count amended counterclaim in response to API's breach of contract complaint. Count 1 asserts that API's alleged use, disclosure, and retention of TechnoMedia's confidential information in violation of the parties' non-disclosure agreement constitutes tortious misappropriation and conversion of trade secrets. (*See id.* ¶¶ 36-47). In addition to seeking actual and punitive damages, as well as attorneys' fees, TechnoMedia seeks an injunction barring API from further use or disclosure of TechnoMedia's trade secrets and ordering it to return all confidential information to TechnoMedia. (*Id.* ¶¶ 44, 45, 47). Claiming irreparable harm, TechnoMedia has also moved for a preliminary injunction. (Def.'s App. for Prelim. Inj. [#23]). Count 2 of the Amended Counterclaim asserts that API never intended to abide by the non-disclosure agreement and that, as a result of API's misrepresentation that the non-

5

disclosure agreement would survive "in perpetuity," it fraudulently induced TechnoMedia to enter into the API-TechnoMedia Agreement. (*See* Am. Countercl. [#32] ¶¶ 48-53). Count 3 asserts that API made defamatory and disparaging statements about TechnoMedia and its owner that "included claims of criminality, fraud, and financial improprieties." (*See id.* ¶¶ 54-70). Count 4 asserts that API breached the API-TechnoMedia Agreement and violated its duty of good faith and fair dealing. (*See id.* ¶¶ 71-81). Count 5 asserts that API intentionally interfered with TechnoMedia's third-party contracts and other anticipated business deals. (*See id.* ¶¶ 82-84). Count 6 asserts that API and TechnoMedia formed a joint venture partnership and that, as a result, API owed TechnoMedia fiduciary duties, which API breached by allowing Ecoman to use TechnoMedia's products and by misappropriating TechnoMedia's confidential information. (*See id.* ¶¶ 85-88). With the exception of the breach of contract claim set forth in Count 4, API has moved to dismiss TechnoMedia's counterclaims, all of which sound in tort, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper if the plaintiff has "failed to state plausible grounds for relief." *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint or counterclaim "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). This is not to say that the plaintiff is entitled to the benefit of any conceivable inference. To the contrary, the Court "need not accept inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court

accept legal conclusions cast in the form of factual allegations." *Id.* Although the factual

allegations need not be detailed, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (internal quotation marks and alterations omitted). Factual allegations,

even though assumed to be true, must still be "enough to raise a right to relief above the

speculative level." *Id.*

## DISCUSSION[3]

**I.    Misappropriation Of Trade Secrets And Conversion (Count One)**

TechnoMedia alleges that API wrongfully disclosed TechnoMedia's trade secrets "to

Cagan, Quinn, TWL or other third parties, including TechnoMedia's competitors and former

---

[3] The first wrinkle in this case involves choice of law. The parties disagree about
whether Texas or District of Columbia law applies to TechnoMedia's tort claims, yet neither
party explains how the choice of law might affect the outcome of the case. TechnoMedia
contends that Texas law applies, but it concedes that its claims would survive under District
of Columbia law as well. Conversely, API contends that District of Columbia law applies,
but it concedes that its motion to dismiss would also prevail under Texas law. Before
embarking on any choice of law analysis, the Court "must first determine if there is a
conflict between the laws of the relevant jurisdictions." *Young Women's Christian Ass'n of
the Nat'l Capital Area, Inc. v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).
"Only if such a conflict exists must the court then determine, pursuant to District of
Columbia choice of law rules, which jurisdiction has the 'more substantial interest' in the
resolution of the issues." *Id.* Other than the legal rules pertaining to self-publication as a
basis for establishing a defamation claim, which the Court will address later, the parties
point to no conflict between Texas and District of Columbia law that would require the
Court to apply the District's choice of law rules. Accordingly, with the exception of the law
regarding self-publication, the Court will apply District of Columbia law to TechnoMedia's
tort claims.

agents." (Am. Countercl. [#32] ¶ 39). API moves to dismiss this claim on the ground that TechnoMedia implicitly authorized the disclosure of its trade secrets to TWL and its principals. Under District of Columbia law, there can be no misappropriation unless the disclosure or use of a trade secret is "without express or implied consent." D.C. Code § 36-401(2)(B). In its original counterclaim, TechnoMedia admitted that it "shared various trade secrets with API and with TWL." (Countercl. [#18] ¶ 14). This admission suggests that TechnoMedia had authorized the disclosure of its trade secrets to TWL, which makes sense considering that TechnoMedia had partnered with TWL to carry out the API-TechnoMedia Agreement. TechnoMedia attempted to cure this pleading deficiency in its amended counterclaim by alleging that the trade secrets it shared with API were "not necessarily the same" as the trade secrets it shared with TWL. (Am. Countercl. [#32] ¶ 19). Even if I were to accept as true, however, that the trade secrets were not *necessarily* the same, this allegation is a far cry from asserting that the trade secrets were not *in fact* the same. Because TechnoMedia failed to plead that the trade secrets it disclosed to TWL were actually different from the trade secrets it disclosed to API, its factual allegations are not "enough to raise a right to relief above the speculative level."[4] *Twombly*, 550 U.S. at 555.

---

[4] The plaintiff's duty is to plead the facts that it believes, in good faith, to be true. If a plaintiff is permitted to plead facts that it believes *might* be true, then the commencement of a lawsuit would be nothing more than a speculative enterprise that, if unchecked, would lead to an unjustified fishing expedition. A defendant ought not to be exposed to the burdens of litigation and scarce judicial resources ought not to be expended merely because the plaintiff believes that the defendant *might* have caused harm to the plaintiff. It is for this reason that the Supreme Court requires plaintiffs to plead facts that rise above mere speculation. TechnoMedia's allegation that the trade secrets supplied to TWL are not "necessarily" the same as those supplied to API is tantamount to a speculative allegation that the trade secrets *might* be different. TechnoMedia attempted to cure this defect by asserting in its opposition brief that the "[t]rade secrets are in fact not the same." (Def.'s Opp'n [#45-1] at 21). But

8

This deficiency is compounded by the fact that TechnoMedia makes no effort to plead what trade secrets have been misappropriated.[5] Based on the face of TechnoMedia's pleading, there is no way to know what TechnoMedia's trade secrets are and which trade secrets have been disclosed to API but not TWL. In the absence of factual allegations showing that the trade secrets supplied to API were *in fact* different from the trade secrets supplied to TWL and that API disclosed trade secrets to TWL that had not already been disclosed to TWL, TechnoMedia's right to relief remains entirely speculative. To survive dismissal, it is not enough to plead a statement of facts "'that merely creates a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004)). Accordingly, the claim that API wrongfully disclosed TechnoMedia's trade secrets to TWL and its principals must fail.

Nor is TechnoMedia's misappropriation and conversion claim salvaged by alleging that API "misappropriated and divulged" its trade secrets to "other third parties, including TechnoMedia's competitors and former agents," (Am. Countercl. [#32] ¶ 39), or that API

---

this *post hoc* attempt to remedy a deficiency in the pleading is not acceptable: "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (internal quotation marks omitted). Notwithstanding the wide latitude given to litigants at the pleading stage, a pleading is not to be used as a constantly moving target that the pleader can reformulate every time the pleading is challenged. Sooner or later, it "must stand or fall on its own." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992).

[5] All that TechnoMedia says is that it "possessed valuable trade secrets" and that these "trade secrets consisted of information, including compilations, programs, methods, techniques, and processes." (Am. Countercl. [#32] ¶ 37). But this depiction of TechnoMedia's trade secrets is nearly identical to the D.C. Code, which defines a "trade secret" generically as "information, including a formula, pattern, compilation, program, device, method, technique, or process." D.C. Code § 36-401(4).

continues "to make unauthorized uses and disclosures of TechnoMedia's trade secrets [by requesting proposals from] former agents of TechnoMedia and/or competitors of TechnoMedia for the development of TechnoMedia's trade secrets," (*id.* ¶ 40(e)). I agree with API that these are the sort of "naked assertions devoid of further factual enhancement" that fall woefully short of the already liberal pleading standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and alteration omitted).

The only claim that I believe survives dismissal is TechnoMedia's allegation that "API has refused to return the trade secrets to TechnoMedia as requested." (Am. Countercl. [#32] ¶ 40(e)). In its Motion to Dismiss, API does not challenge the legal sufficiency of this claim. As a consequence, I must address whether TechnoMedia is entitled to a preliminary injunction requiring API to return immediately any trade secrets wrongfully withheld from TechnoMedia.

TechnoMedia's Application for Preliminary Injunction seeks, among other things, an order requiring API to return all of TechnoMedia's trade secrets and an order enjoining further unauthorized use or disclosure of those trade secrets. Because TechnoMedia has failed to state a claim that API has wrongfully used or disclosed TechnoMedia's confidential information, there is no basis for a preliminary injunction on that ground. That leaves the question of whether TechnoMedia is entitled to a preliminary injunction ordering API to return whatever trade secrets it is alleged to be wrongfully withholding. The factors that a court must weigh in deciding whether to grant a preliminary injunction are: (1) whether "the plaintiff has a substantial likelihood of success on the merits"; (2) whether "the plaintiff would suffer irreparable injury were an injunction not granted"; (3) whether "an

injunction would substantially injure other interested parties"; and (4) whether "the grant of an injunction would further the public interest." *Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009). Although "these factors interrelate on a sliding scale, the movant must, at a minimum, demonstrate that irreparable injury is *likely* in the absence of an injunction." *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334-35 (D.D.C. 2009) (Leon, J.) (internal quotation marks and citations omitted). "[B]ecause the basis of injunctive relief in the federal courts has always been irreparable harm, a movant's failure to establish irreparable harm is grounds for denying a motion for preliminary injunction without considering the other factors." *Id.* at 335 (internal quotation marks omitted).

Here, TechnoMedia has utterly failed to meet its burden to show that it will suffer immediate and irreparable harm if its trade secrets are not returned until the conclusion of this litigation. Because TechnoMedia has failed to even plead that API has wrongfully used or disclosed TechnoMedia's trade secrets, there is no reason to believe that API is unwilling or unable to protect whatever secrets it still has until this case is decided. Accordingly, I find no basis to grant the extraordinary remedy of a preliminary injunction at this time.[6]

---

[6] Nor does the Court see any basis to grant TechnoMedia's request for a preliminary injunction ordering API to issue API-branded Certificates of Completion to qualifying e-learning students. (*See* Def.'s App. for Prelim. Inj. [#23] at 1). TechnoMedia claims that API's refusal to issue these certificates is a breach of their contract that "endanger[s] TechnoMedia with the loss of customers and business opportunities, and the very real possibility of permanently damaged relationships with its customers." (*Id.* at 15). Because TechnoMedia's asserted injury is speculative (not immediate) and is economic in nature, it does not constitute the sort of irreparable harm that justifies preliminary injunctive relief. *See, e.g., Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time . . .

## II.     Fraud And Fraud In The Inducement (Count Two)

TechnoMedia's second counterclaim asserts that API fraudulently induced

TechnoMedia to enter into the API-TechnoMedia Agreement when an API official made

certain oral assurances and promises that the parties' non-disclosure agreement would

continue in effect after the API-TechnoMedia Agreement was executed.  (Am. Countercl.

[#32] ¶ 50).  TechnoMedia claims that API's representations about the validity of the non-

disclosure agreement were fraudulent because API knew at the time "that it had no intention

of honoring the covenants of confidentiality and non-disclosure" contained in the

agreement.  (*Id.* ¶ 49).  As support for this otherwise naked assertion of fraud, TechnoMedia

cites only two pieces of evidence:  (1) the API official's insistence that TechnoMedia sign

the contract without the assistance of legal counsel, (*id.* ¶ 50); and (2) API's current

litigation position that the non-disclosure agreement is no longer operative because the API-

TechnoMedia Agreement superseded it, (*id.* ¶ 49).  Had API not misrepresented its intention

to abide by the non-disclosure agreement, TechnoMedia says that it would not have

consented to the API-TechnoMedia Agreement.  (*Id.* ¶ 52).  As a matter of law, this claim is

baseless.

Putting aside the legal question of whether the non-disclosure agreement is still

binding, it is clear that TechnoMedia has no basis for a fraudulent inducement claim

premised on API's prior representation that the non-disclosure agreement would remain in

effect.  By its plain terms, the API-TechnoMedia Agreement forecloses any reliance on

representations preceding formation of the contract:  "This Agreement sets forth the entire

---

." (internal quotation marks omitted)); *id.* (noting that it is "well settled that economic loss
does not, in and of itself, constitute irreparable harm").

agreement between the parties. This Agreement supersedes all prior proposals, understandings or agreements, oral or written, relating thereto . . . ." (Compl., Ex. A [#1-1] ¶ 42). Where a contract expressly supersedes all previous understandings and agreements, a prior representation cannot serve as the basis for a claim of fraud or fraud in the inducement. Were I to permit the use of such prior representations to defeat the clear words of the contract, "'contracts would not be worth the paper on which they are written.'" *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) (quoting *Tonn v. Philco Corp.*, 241 A.2d 442, 445 (D.C. 1968)). TechnoMedia is a sophisticated company whose owner had "the capacity and opportunity to read [the] written contract" and whose assent was "not obtained by trick or artifice" or "under any emergency." *Id.* (internal quotation marks omitted). As such, it cannot now claim fraud or fraud in the inducement.

## III.   Disparagement And Defamation (Count Three)

TechnoMedia's third count alleges that API and its agents engaged in a "smear campaign" against TechnoMedia and its owner. (Am. Countercl. [#32] ¶ 55). Four discrete allegations of disparagement and defamation emerge from TechnoMedia's Amended Counterclaim. First, TechnoMedia claims that API personnel republished "throughout the API organization" accusations of "dishonesty, financial misdealing and other criminality" originally made by TWL principals, Cagan and Quinn. (*Id.* ¶¶ 23, 22(a)). Second, TechnoMedia claims that an officer of API addressed a letter to TechnoMedia's owner in June 2008, warning TechnoMedia that it was in breach of the API-TechnoMedia Agreement and accusing TechnoMedia and its owner of "misrepresentation," "concealment," "fraud," and "theft." (*Id.* ¶ 23(c)-(f)). Third, TechnoMedia claims that API addressed another

defamatory letter to TechnoMedia in January 2009 in which API terminated the API-TechnoMedia Agreement. (*Id.* ¶ 23(c), (h)-(i)). Finally, TechnoMedia claims that API's outside legal counsel made defamatory statements about TechnoMedia and its owner to the local police in Carrollton, Texas. (*Id.* ¶ 62). Unfortunately for Technomedia, none of these allegations of disparagement and defamation withstand the slightest scrutiny.[7]

TechnoMedia's first allegation—that specific API personnel republished "throughout the API organization," (*id.* ¶ 23), Cagan's and Quinn's accusations of "dishonesty, financial misdealing and other criminality," (*id.* ¶ 22(a))—lacks sufficient specificity to state a claim for defamation. Fundamental to any defamation claim is that the plaintiff must prove that "the defendant published the statement without privilege to a third party." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005). Although there is no heightened pleading standard in the District of Columbia, the allegations must be specific enough to permit the defendant to respond. *Id.* at 76-77. To satisfy federal pleading standards in light of *Twombly*, that means that the plaintiff must "adequately identif[y] third parties, or 'listeners,' with sufficient specificity to enable the defendant to answer the complaint." *Vreven v. Am. Ass'n of Retired Pers.*, 604 F. Supp. 2d 9, 15 (D.D.C. 2009). TechnoMedia's allegation that certain API

---

[7] TechnoMedia's disparagement (or injurious falsehood) claims fail for the same reasons as its defamation claims. "Although distinctions exist at common law between actions for injurious falsehood and defamation, the torts have always been very closely related." *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985). The primary difference, which has no bearing on the Court's reasons for dismissal, is "the requirement in an injurious falsehood action of pecuniary harm," but even that distinction is negligible when a corporation like TechnoMedia is suing for defamation, because it "may only recover actual damages in the form of lost profits." *Id.* at 1156. Furthermore, the privileges applicable to defamation claims also apply to injurious falsehood claims. *See Restatement (Second) of Torts* § 635, cmt. a (1977) ("The circumstances under which there is an absolute privilege to publish an injurious falsehood are in all respects the same as those under which there is an absolute privilege to publish matter that is personally defamatory.").

officers republished Cagan's and Quinn's allegedly defamatory statements "throughout the API organization" does not meet that standard. *See id.* at 16 (holding that the complaint, which alleged that the defamer "has told [unnamed] others at AARP," "does not give defendant 'fair notice' of the nature of the claims and the 'grounds' on which the claim rests, both of which are necessary in order for defendant to respond properly").

TechnoMedia's next two allegations—(1) that an API official sent a defamatory letter to TechnoMedia's owner in June 2008 warning about a breach of contract and (2) that API sent another defamatory letter to TechnoMedia in January 2009 terminating the API-TechnoMedia Agreement—also fail. Even if I were to accept that the allegations of "misrepresentation," "concealment," "fraud," and "theft" in the June 2008 letter were defamatory in nature, (*id.* ¶ 23(c)-(f)), no claim based on that letter can possibly survive dismissal because publication of the letter is privileged. The District of Columbia, "like the majority of other jurisdictions, has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Oparaugo*, 884 A.2d at 79 (internal quotation marks omitted). The privilege applies, not only to attorneys, but to parties as well. *Id.* at 79-80. The Court is mindful that this privilege is "not lightly conferred" and that "caution is warranted" where no judicial proceeding has begun. *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 341 (D.C. 2001). Courts must pay "particularly close attention to the factual circumstances," *id.* (internal quotation marks omitted), to determine whether there is a "reasonable nexus between the publication in question and the litigation under consideration," *id.* at 342. It is obvious from the face of the

letter, as well as the surrounding facts and circumstances of this case, that a reasonable

nexus exists between API's publication of the June 2008 letter and the breach of contract

action now pending before this Court. The letter is titled "Notice of Breach of Contract,"

and it lays out all the ways that API believed TechnoMedia to be in violation of their

agreement. (Compl., Ex. B [#1-1] at 1). If that alone were not enough, the letter goes on to

warn TechnoMedia that if the breach is not corrected within thirty days, "API will take

appropriate action to protect its rights." (*Id.*). This letter clearly raised the specter of future

litigation. In that sense, it is quite similar to the letter found to be privileged in *Messina v.

Krakower*, which had warned: "If we do not hear back from you . . . by the close of

business on January 13, 2003, we will assume that you are not interested in resolving this

matter amicably, and will proceed accordingly." 439 F.3d 755, 761 (D.C. Cir. 2006).

Given that the obvious purpose of the letter was to put TechnoMedia on notice of possible

legal action and given that legal action has in fact materialized due to the alleged breaches

set forth in the letter, I conclude that API is immune from liability for defamation based on

its publication of the June 2008 "Notice of Breach of Contract."[8]

---

[8] At the risk of beating a dead horse, I also agree with API that TechnoMedia's defamation claim based on the June 2008 letter is barred by the statute of limitations. "A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005). Because statutes of limitation are procedural, *Jovanovic v. U.S.-Algeria Business Council*, 561 F. Supp. 2d 103, 111 (D.D.C. 2008), the District of Columbia's one-year statute of limitations applies, D.C. Code § 12-301(4). Here, TechnoMedia alleges publication of the defamatory letter dated June 5, 2008, (Am Countercl. [#32] ¶ 23(d)), and republication of the letter by email on June 24, 2008, (*id.* ¶ 23(f)). TechnoMedia did not file its Amended Counterclaim until July 6, 2009. In its original counterclaim, TechnoMedia did not raise any allegation of defamation based on the June 2008 letter. As a result, that claim cannot "relate back" to the original counterclaim filed on June 5, 2009, and is therefore barred by

The grounds for dismissing TechnoMedia's claim that is based on the January 2009 termination letter are even stronger. First, like the June 2008 letter, publication of the termination letter is protected by the absolute privilege for statements made preliminary to a judicial proceeding. Indeed, within a matter of days, TechnoMedia commenced litigation in Texas based on that letter, (Compl., Ex. A [#1-1] ¶ 53), and this litigation soon followed. Second, TechnoMedia has completely failed to allege what content in the termination letter is defamatory. The Amended Complaint describes the January 2009 letter as "a defamatory letter of termination of contract." (Am. Countercl. [#32] ¶ 23(c)). This conclusory characterization, however, hardly satisfies the requirement that defamation plaintiffs plead "the time, place, *content*, speaker, and listener of the alleged defamatory matter." *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 494 (D.D.C. 1994) (emphasis added); *see also Twombly*, 550 U.S. at 555 (noting the plaintiff's obligation under the Federal Rules to provide "more than labels and conclusions"). Nor has TechnoMedia stated a claim for defamation by alleging that the termination letter "purports to require TechnoMedia to completely dismantle the API-University project, immediately cease all marketing, sales and support of the eLearning courseware and software, and terminate all existing contracts." (Am. Countercl. [#32] ¶¶ 23(h), (i)). Statements like these do not remotely approach the kind of injurious language that constitutes defamation under District of Columbia law. *See Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006) ("[A]n allegedly

---

the one-year limitations period. *See Caudle v. Thomason*, 942 F. Supp. 635, 641 (D.D.C. 1996) ("Because the slander claim involves publications entirely distinct from the publication of the memo, and made to a number of individuals not mentioned in the original complaint, the Court finds that the slander claim does not relate back to the filing of the original complaint.").

defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" (internal quotation marks omitted)).[9]

Even less persuasive is TechnoMedia's final allegation that API's outside counsel made "disparaging and defamatory" statements about TechnoMedia and its owner to the police in Carrollton, Texas. (Am. Countercl. [#32] ¶ 62). Yet again, TechnoMedia has made no attempt to allege the content or substance of the supposedly defamatory statements. Even after amending its counterclaim, TechnoMedia still offers nothing more than labels and conclusions.[10] Accordingly, that defamation claim must be dismissed as well.[11]

---

[9] To the extent that TechnoMedia raises a disparagement allegation separate and apart from its defamation allegations, it does so only briefly when describing the so-called "Schechter Document." (Am. Countercl. [#32] ¶ 29). The allegedly disparaging statement in that document is that "TWL Skill Ventures" is the "exclusive distributor" of e-learning products for API. (*Id.* ¶ 29(a)). This statement, even if untrue, does not constitute injurious falsehood for the same reason that the January 2009 termination letter does not constitute defamation: The statement is not capable of defamatory or injurious meaning. *See Clawson v. St. Louise Post-Dispatch, LLC*, 906 A.2d 308, 316-17 (D.C. 2006) (affirming the dismissal of a disparagement or injurious falsehood claim where the communication did not make the plaintiff appear odious, infamous, or ridiculous).

[10] This claim is also barred by the one-year statute of limitations. *See* D.C. Code § 12-301(4). TechnoMedia alleges that the defamatory communication occurred on or about March 18, 2008, (Am. Countercl. [#32] ¶ 62), well over a year before it filed its original counterclaim on June 5, 2009.

[11] TechnoMedia also claims throughout its Amended Counterclaim that it self-published API's defamatory remarks to third parties and that this self-publication is sufficient to state a defamation claim. Because self-publication cannot be a basis for defamation under District of Columbia law, *Austin v. Howard Univ.*, 267 F. Supp. 2d 22, 29 (D.D.C. 2003), but can be under Texas law, *Austin v. INET Techs., Inc.*, 118 S.W.3d 491, 499 (Tex. App. 2003), the Court must determine which law applies. To decide that question, the District of Columbia follows the "substantial interests" test, under which the Court must "balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in the resolution of the issue." *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (internal quotation marks omitted). Because the self-publication purportedly occurred in Texas, where TechnoMedia is located, and because the harm will most likely occur there, Texas has the more substantial interest in resolving this particular dispute. Under Texas law, however, self-publication is

## IV. Intentional Interference With Economic Advantage (Count Five)

In its fifth count, TechnoMedia alleges that API intentionally interfered with TechnoMedia's economic advantage arising from its contracts with TWL, its expected business relationships with a foreign government and a foreign company, its "Qualification Centers," and its customer base. (Am. Countercl. [#32] ¶ 83). To state a claim for tortious interference, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotation marks omitted). No claim will lie, however, where "the interference is caused by the defendant's breach of his own contract with plaintiff." *Bus. Equip. Ctr., Ltd. v. DeJur-Amsco, Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1979).

In this case, the only interference alleged by TechnoMedia is entirely a product of API's alleged violations of the API-TechnoMedia Agreement. TechnoMedia asserts, for instance, that "API deprived TechnoMedia of revenue generating opportunities that were *specifically included in the API-TechnoMedia Agreement*, including the Worksafe program that API was bound to direct to TechnoMedia." (Am. Countercl. [#32] ¶ 26 (emphasis added)). TechnoMedia also asserts that because of API's termination of the agreement, which resulted in "API's unilateral directive that TechnoMedia not enter into any 'long-

---

actionable only "if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature." *Austin*, 118 S.W.3d at 499. That requirement is not satisfied here. Besides being hopelessly vague and inadequately pled, TechnoMedia's claim that it was somehow forced to self-publish defamatory statements, (Am. Countercl. [#32] ¶ 56), is not actionable in light of its assertion that the statements were "defamatory *per se*," (*id.* ¶ 57).

term' contracts, TechnoMedia was essentially shut out of the revenue generating opportunities *to which it was entitled*, including the Qualification Centers." (*Id.* (emphasis added)). In further support of its interference claims, TechnoMedia alleges that "API refused to deal with TechnoMedia in good faith *as it is required to do under the parties' agreements*, the law of the District of Columbia, and other applicable law," (*id.* ¶ 28 (emphasis added)), by among other things "misappropriating and interfering with business opportunities with Coastal and WCS/CUDD," (*id.* ¶ 28(l)); "interfering with TechnoMedia in the performance of its agreements with Skill Ventures, TWL, or both," (*id.* ¶ 28(p)); "interfering with TechnoMedia in the performance of its agreements with various third-party licensees and sub-licensees," (*id.* ¶ 28(q)); and "interfering with TechnoMedia in regard to Qualification Centers," (*id.* ¶ 28(r)). TechnoMedia cannot assert that API breached its contract with TechnoMedia by "interfering" with business opportunities that flow from the contract and then assert a separate claim in tort that API intentionally interfered with those opportunities. TechnoMedia's "remedy is not a claim for tortious interference with contract, rather, it is an element of damages for [its] breach of contract claim." *In re Beitzell & Co., Inc.*, 163 B.R. 637, 656 (Bankr. D.D.C. 1993). Because the lost opportunities alleged by TechnoMedia arise from the API-TechnoMedia Agreement and API's alleged breach of that agreement, they cannot serve as the basis for TechnoMedia's tortious interference claims.[12]

---

[12] TechnoMedia's argument that API's defamation constituted tortious interference separate and apart from any breach of contract is ultimately unavailing because TechnoMedia has failed to state any claim for defamation. In any event, TechnoMedia has not pled facts showing that API made defamatory remarks to any third party with whom TechnoMedia had a current or expectant business arrangement, with the possible exception

## V.    Breach Of Fiduciary Duty (Count Six)

TechnoMedia's final count asserts that API and TechnoMedia formed a joint venture

that gave rise to fiduciary duties, which API subsequently breached by, among other things,

violating the terms of the API-TechnoMedia Agreement, by misappropriating

TechnoMedia's confidential information, and by allowing Ecoman (a foreign company with

alleged ties to Iran) to use TechnoMedia's API-branded materials.  (Am. Countercl. [#32] ¶

86-87).  Unfortunately for TechnoMedia, its claim is foreclosed by the unambiguous terms

of the API-TechnoMedia Agreement, which states:

> It is expressly understood between the parties hereto that by virtue of the rights
> granted by API to CONTRACTOR, that the CONTRACTOR is acting as an
> independent contractor and that no association, partnership or joint venture of
> any kind has been created.  CONTRACTOR agrees not to refer to itself as
> API's agent nor refer to the relationship between the parties as a joint venture
> or partnership.

(Compl., Ex. A [#1-1] ¶ 30).  Indeed, "[w]here the language of a contract is wholly

unambiguous, [courts] will not consider extrinsic evidence of the parties' intent." *Vulcan*

*Arbor Hill Corp. v. Reich*, 81 F.3d 1110, 1117 (D.C. Cir. 1996); *see also Holland v.*

*Hannan*, 456 A.2d 807, 815 (D.C. 1983) (stating that, absent any ambiguity, "a written

contract duly signed and executed speaks for itself and binds the parties without the

necessity of extrinsic evidence").  Again, TechnoMedia is a sophisticated business fully

capable of understanding and executing the API-TechnoMedia Agreement.  Because that

---

of TWL.  The Court agrees with API, however, that TechnoMedia cannot now argue that the
allegedly defamatory statements by API interfered with the TWL-TechnoMedia relationship
when TechnoMedia has alleged all along that TWL and its principals were the original
source of those statements.  (*See, e.g.*, Am. Countercl. [#32] ¶ 26 (alleging that "API
listened to and republished TWL's libel and slander" and then "ultimately repudiated the
API-TechnoMedia Agreement")).

agreement speaks for itself, TechnoMedia cannot now argue based on evidence beyond the plain language of the agreement that API and TechnoMedia formed a joint venture or partnership. There being no basis to conclude that a joint venture ever existed between the parties, TechnoMedia cannot state a claim for breach of fiduciary duty.

## CONCLUSION

Having employed a "kitchen sink" approach to pleading its tort counterclaims, TechnoMedia has played unacceptably fast and loose with the already generous pleading standards of the Federal Rules and with the law itself. Accordingly, with the exception of TechnoMedia's claim that API is wrongfully withholding TechnoMedia's trade secrets, API's Motion to Dismiss as to all other claims and allegations is GRANTED. In addition, TechnoMedia's wholly unsubstantiated Application for Preliminary Injunction is DENIED. An Order consistent with this Memorandum Opinion is attached.


RICHARD J. LEON
United States District Judge